COMMONWEALTH vs. THOMAS J. DWYER.

Suffolk. September 8, 1980. — November 14, 1980.

Present: HALE, C.J., GRANT, & NOLAN, JJ.

*Practice, Criminal,* Fair trial, Striking of testimony. *Witness,* Refusal to answer on cross-examination.

At a criminal trial, the judge erred in striking a witness's entire testimony because of his refusal to answer certain questions on cross-examination which involved inquiries into merely collateral matters to impeach the witness's general credibility. [712-714]

INDICTMENT found and returned in the Superior Court on February 15, 1978.

The case was tried before *Ronan, J.*

*William J. Leahy* for the defendant.

*John A. Kiernan,* Assistant District Attorney, for the Commonwealth.

HALE, C.J. The defendant has appealed from his conviction of unlawfully carrying a firearm on his person (third offense) in violation of G. L. c. 269, § 10(*a*). He has raised the sole issue "[w]hether the judge's striking of the entire testimony of the only defense witness to have contradicted the police version of the incident denied defendant his constitutional right to present a defense."[1]

There was evidence at trial from prosecution witnesses that on January 8, 1978, two police officers observed an automobile stopping at a sidewalk in Charlestown and saw three occupants alight. The defendant emerged from the back seat, one Somers from the front passenger's seat, and one Houlihan from the driver's seat. Each of the men was

---

[1] See *Washington* v. *Texas,* 388 U.S. 14, 19 (1967); *Commonwealth* v. *Francis,* 375 Mass. 211, 213-214, cert. denied 439 U.S. 872 (1978).

known to at least one of the two police officers. All three men were patted down, and the defendant and Somers were found to have handguns on them. Houlihan was unarmed. The defendant and Somers were arrested; Houlihan was not.[2] Subsequently, the car was searched, but nothing of concern to the police was found.

Somers was the only witness for the defense to contradict the police testimony. He testified that the police had not found guns on the defendant or on him but had found them under the front seat of the car when they had searched it. He stated that the police had searched the car after he and the defendant had been handcuffed and put in the police cruiser. Somers further testified that one of the police officers said, "I found two", and held up the guns, that he (Somers) responded, "Those are not our pistols," and that the officer said, "They are now."

During direct examination by the defendant's counsel, Somers was asked, "Who was driving the car?" Somers then went on to state in answering further questions that he had met the driver briefly, that he did not know him very well, and that he had seen him only twice before. Under cross-examination he reiterated the foregoing, indicating also that he had met the driver "[t]hat evening and a couple evenings before that." After answering questions as to his address on January 8, he was asked by the prosecutor, "Where had you been since 1973?" Somers responded: "Can I speak to Your Honor out of the earshot of the jury?" which prompted the judge to call counsel to a bench conference. We set out the pertinent parts of what followed:

PROSECUTING ATTORNEY: "I am interested in . . . establishing bias on behalf of his friend and also I am trying to establish he knew very well who John Houlihan was. They are friends. And I can establish that they lived together."

THE JUDGE: "That they lived together? That he knew Houlihan before he said that he knew him? He says he only met him at the bar."

---

[2] There is no question that the acts of the officers were warranted on the basis of information that they possessed.

PROSECUTING ATTORNEY: "I know. My information is that they were doing time at the same place. I prosecuted John Houlihan so I know he was in a correctional institute."

THE JUDGE: "Well, was he with this fellow —"

PROSECUTING ATTORNEY: "That is what — I know that he was at M.C.I. Norfolk and this guy is charged with escape from M.C.I. Norfolk. And my police officer tells me that they were definitely there together."

THE JUDGE: "Well, if you have got evidence to support it, I suppose it is by way of impeachment."

ATTORNEY FOR DEFENDANT: "I am in a difficult position because naturally he can be impeached. I cannot question that."

THE JUDGE: "I think if the fellow says, 'I met him at a bar' and you ask: 'Weren't you two down at a correctional facility together,' and he says 'yes,' that shows him to be a bit of a problem. If he says 'no,' he is going to have to have evidence of the same. I am afraid that under these conditions it is a problem."

ATTORNEY FOR DEFENDANT: "I would tend to agree. I cannot answer for him. I only spoke to him briefly at the noon recess. He is concerned with his records of convictions coming out."

THE JUDGE: "He knew about his privilege because he exercised it yesterday. His counsel knew he was to be —"

PROSECUTING ATTORNEY: "For the record [the attorney for Somers] was here during the break."

THE JUDGE: "In any event I do not see a problem there, and I think for Houlihan that he can pursue it."

ATTORNEY FOR DEFENDANT: "I agree."

(End of Bench Conference)

*               *               *

PROSECUTING ATTORNEY: "Where were you living in December of 1977?"

MR. SOMERS: "Your Honor, I'd like to speak to your Honor on that question."

THE JUDGE: "Well, the question is a simple one. It says, Where were you living —"

Mr. Somers:  (speaking to judge)

The judge:  "You have had counsel here . . . ."

Mr. Somers:  "I'd like to have my counsel here before I answer that question."

The judge:  "You may have the question."

Prosecuting attorney:  "Your answer to the question, please?"

Mr. Somers:  "Your Honor, I'd like to have my counsel here before I answer that."

The judge:  "I appreciate that, but I will direct you to answer it."

Mr. Somers:  "I'll take the Fifth Amendment."

The judge:  "All right, you may do so, but still I cannot let you testify and you cannot testify — begin to answer questions and then elect to take the Fifth Amendment."

A colloquy followed.  Somers continued to claim the protection of the Fifth Amendment to the United States Constitution.  The judge informed him that his record of conviction as well as any inconsistencies between his testimony given at the present trial and his testimony given at his upcoming trial could be used against him at his trial.

The judge:  "I think what I am trying to tell you is that I think you may be putting yourself in a very uncomfortable position in a matter which is really of no consequence.  In other words, I have no doubt in my own mind, and I say this for the record, but also for the benefit — I have no doubt that it is within the province of the law as it presently exists for me to order you to answer."

Mr. Somers:  "I realize that."

The judge:  "And upon your failure to answer, I will have to give you six months in the house of correction after you finish whatever sentence you serve."

The judge persisted in his attempts to have the witness answer the question voluntarily.  The following occurred:

The judge:  "That is why I am telling you I think you are risking six months unnecessarily."

Mr. Somers:  "I will cite the Fifth Amendment if the Court orders me to answer the question.  I'll do it."

THE JUDGE: "I will order you to do it. You put it again and bring the jury down."

(Jury present)

PROSECUTING ATTORNEY: "Mr. Somers, where were you living in December of 1977?"

MR. SOMERS: (No response).

THE JUDGE: "I now direct you to answer."

MR. SOMERS: "Your Honor, I refuse to answer on the grounds of the Fifth Amendment."

THE JUDGE: "Now I direct you to answer."

MR. SOMERS: "I refuse to answer on the grounds my answer may tend to incriminate me, Your Honor."

THE JUDGE: "All right. I will see counsel over here."

(Bench Conference)

THE JUDGE: "I think he had a change of mind. I do not think he misunderstands. I move to strike all his testimony and tell them to utterly disregard it."

ATTORNEY FOR DEFENDANT: "Your Honor, I have to object to that."

THE JUDGE: "That is the purpose of giving you an opportunity to."

PROSECUTING ATTORNEY: "Your Honor, I think that would leave me in somewhat of a tenable [sic] position even though it is stricken before the legal record. The jury has it before their minds, and I would like to continue with the impeachment part. I would ask that he be cited for contempt."

There followed further discussion of contempt in the course of which defense counsel stated that he did not want to lose "this man's testimony." The bench conference ended, and the witness was questioned as to prior convictions. He refused to answer any of the questions, citing the Fifth Amendment. The witness's lawyer, who had been called earlier, arrived and was briefed on what had happened. The lawyer talked in private with the witness, after which the witness informed the court that he would not answer the questions. The judge sentenced the witness to "six months

in the House of Correction Suffolk County, said sentence to be served from and after any sentence" then being served. The judge then recalled the jury and instructed them that they were to disregard all of Somers' testimony. The defendant objected, and his exception was noted.

When a witness refuses to answer particular questions on cross-examination, his testimony may be struck unless the questions go to collateral matters. *United States* v. *Cardillo*, 316 F.2d 606, 611 (2d Cir.), cert. denied, 375 U.S. 822 (1963). The Supreme Judicial Court recognized *Cardillo* as the leading case on this issue in *Commonwealth* v. *Funches*, 379 Mass. 283, 293 (1979). *Cardillo* stated three categories to be considered in determining whether to strike all or part of a witness's testimony or take other remedial action because of unanswered questions asked a witness on cross-examination.[3] Although the *Cardillo* decision deals with the trial court's failure to strike all or part of a prosecution witness's testimony because of the refusal of the witness to answer questions on cross-examination, the decisions called to our attention and those we have found which have considered the refusal of a defense witness to answer questions on cross-examination have adopted the *Cardillo* analysis. See *United States* v. *Frank*, 520 F.2d 1287, 1292 (2d Cir. 1975), cert. denied, 423 U.S. 1087 (1976); *State* v. *Brown*, 549 S.W. 2d 336, 342-343 (Mo. 1977); *State* v. *Monsoor*, 56 Wis.2d 689, 701 (1973), habeas corpus granted sub nom. *Wisconsin ex rel. Monsoor* v. *Gagnon*, 497 F.2d 1126 (7th Cir. 1974); *Peters* v. *State*, 70 Wis. 2d 22, 35-37 (1975);

---

[3] The court stated (316 F.2d at 613) that: "There would appear to be at least three categories to be considered. The first would be one in which the answer would have been so closely related to the commission of the crime that the entire testimony of the witness should be stricken. The second would be a situation in which the subject matter of the testimony was connected solely with one phase of the case in which event a partial striking might suffice. The third would involve collateral matters or cumulative testimony concerning credibility which would not require a direction to strike and which could be handled (in a jury case) by the judge's charge if questions as to the weight to be ascribed to such testimony arose."

*State* v. *Koller,* 87 Wis. 2d 253, 283 (1979); *Ryan* v. *State,* 95 Wis. 2d 83, 90 (Ct. App. 1980).

The present questions fall into the third of the Cardillo categories. The Commonwealth's purpose[4] in asking these questions was to establish that Somers had lied about the length of his acquaintance with the driver of the car. Since the relationship of the witness and driver had no relevance to the defendant's guilt or innocence, the effort to prove Somers had lied about it was an attack on his general credibility. As such, it was collateral. Contrast *Peters, supra* at 37-38; *Cardillo, supra* at 612-613. See also 3A Wigmore, Evidence §§ 1003-1006 (Chadbourn rev. 1970). See also *Funches, supra* at 293. Although it does not appear that the judge's action was occasioned by the witness's refusal to testify concerning his prior convictions, evidence of such convictions would also have been collateral. *Cardillo, supra* at 611. Refusal by a witness on cross-examination to answer questions related to collateral matters is not ground for striking the witness's testimony. *Cardillo, supra* at 611. *Brown, supra* at 342.

Previous applications of the Cardillo guidelines in factual patterns such as the present one are consistent with this determination. In *Koller, supra,* and *Ryan, supra,* striking the defense witness's testimony was held proper because the witness, by refusing to answer, avoided cross-examination on any probative issues. *Frank, supra* and *Peters, supra,* each involved a witness who refused to answer questions on cross-examination that specifically tested the credibility of his account of the crime. The striking of their testimony was upheld. *Monsoor, supra,* and *Brown, supra,* held the striking of the defense witness's testimony to be error. In both, the disputed questions involved, as does the case before us, inquiries into collateral matters to assault the witness's general credibility.

---

[4] The Cardillo court examined each question in terms of "the purpose of the inquiry and the role which the answer if given, might have played in the defense." *Cardillo, supra* at 612. See *Funches, supra* at 293.

In the circumstances of the present case, the order was not warranted. The prosecutor was not without other equally effective measures to attack Somers' credibility. He could have attacked Somers' general credibility simply on the basis of his previous convictions through witnesses other than Somers. The prosecutor knew the name of the driver and knew when and where he and Somers had been in prison. The prison records could easily have been ordered into court. Also, a police witness had informed the prosecutor that Houlihan and Somers were in M.C.I. Norfolk together. The judge in his charge could have dealt with the witness's refusal to answer rather than employing the Draconian means of striking what, if believed by the jury, would have been a complete defense. We hold that it was error to have done so.

The Commonwealth properly makes no suggestion that the error was harmless.

*Judgment reversed.*

*Verdict set aside.*