**James Dale KELLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 095–83.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 11, 1984.

---

Mary Ann George, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Winston E. Cochran, Jr., and Dan Prashner, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for unauthorized use of an automobile. Punishment, enhanced by two prior felony convictions, was fixed at life. The conviction was reversed by the Court of Appeals, 646 S.W.2d 506 (Tex.App.--Houston (1st) 1982). We granted the State's petition for discretionary review in order to examine the Court of Appeals' holding that the trial court erred in excluding the entire testimony of a defense witness following the assertion of the Fifth Amendment privilege by the witness on cross-examination.

In the course of investigating the burglary of a car dealership, Market Street Motors, in which several blank title forms and dealer license plates were taken, officers arrested appellant as he drove a vehicle bearing Market Street Motors license tags into his apartment complex. In response to the officer's questions, appellant stated he had purchased the automobile and the plates from a friend, and that he had filled out the dealer plates himself. The vehicle which appellant was driving was owned by Roy D. West, who reported it stolen to the police three days earlier, and who testified that he had not given anyone permission to drive the vehicle.

At trial John Daisey was called as a witness by appellant and out of the presence of the jury Daisey was admonished as to his rights under "the Fifth Amendment of the United States Constitution and of the Texas Constitution which prohibits you from being required to give testimony which would be adverse to yourself." Daisey had been arrested on the same day and in the same apartment complex as appellant, when he was found in possession of a different vehicle reported stolen, also bearing Market Street Motors license tags. At trial, after stating that he understood his rights and wanted to testify, Daisey testified out of the presence of the jury in response to questions by appellant's counsel, "I sold Mr. Keller [appellant] a '67 Ford Fairlane ... I gave him a title."

Daisey further stated on direct that he received seven hundred dollars from appellant for the car. On cross-examination Daisey testified that he presently lived at "T.D.C.", and that he was there for "auto theft." When asked "where did you get the car?", Daisey refused to answer on Fifth Amendment grounds. All of the foregoing transpired out of the presence of the jury. After Daisey invoked the privilege, the appellant asked that he be allowed "to tender into evidence [before the jury] the testimony." The trial court disallowed the motion and refused to permit appellant to introduce any part of Daisey's testimony before the jury. The Court of Appeals found that the question to which the witness asserted his Fifth Amendment privilege was collateral to his testimony on direct examination and that the trial court should have granted appellant's motion to tender the testimony of Daisey into evidence.

The Court of Appeals relied upon *United States v. Cardillo,* 316 F.2d 606 (2nd Cir. 1963), cert. denied, 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963); *Fountain v. United States,* 384 F.2d 624 (5th Cir.1967); and *United States v. Ginn,* 455 F.2d 980 (5th Cir.1972), which hold that when a defendant is prevented from cross-examining a prosecution witness due to the assertion of a Fifth Amendment privilege, the court need not strike the witness' direct testimony if the questions asked on cross-examination relate to "collateral" matters.

█ The problem posed by the instant case differs from the cited federal cases because here, the State was prevented from cross-examining a defense witness due to the assertion of a Fifth Amendment privilege. When a defendant is prevented from cross-examining a prosecution witness, a possible Sixth Amendment violation arises, since the right to cross-examine is "implicit within the right to confrontation provided by the Sixth Amendment to the Constitution of the United States as applied through the Fourteenth Amendment." *Hostetter v. State,* 527 S.W.2d 544, 547 (Tex.Cr.App. 1975). The State's right to cross-examine defense witnesses, on the other hand, is not based upon the Sixth Amendment, but rather is required for the accurate determination of guilt or innocence and in order to prevent fraud upon the court. See *Peters v. State,* 75 Wis.2d 22, 233 N.W.2d 420 (1975).

█ Another concern that arises when the State seeks to strike a defense witness' direct testimony due to the assertion of a Fifth Amendment privilege on cross-examination is the defendant's Sixth Amendment right to offer the testimony of witnesses in his defense. See *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Despite these differences, several courts have adopted the analysis of *Cardillo,*

supra, in the situation where a defense witness invokes the Fifth Amendment on cross-examination by the State. See *United States v. Frank*, 520 F.2d 1287 (2nd Cir.1975), cert. denied, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976); *State of Wisconsin ex rel. Monsoor v. Gagnon*, 497 F.2d 1126 (7th Cir.1974); *Commonwealth v. Dwyer*, 10 Mass.App. 707, 412 N.E.2d 361 (1980); *Peters v. State*, supra; cf. *State v. Brown*, 549 S.W.2d 336 (Mo.1977).

■ The right of a defendant to present witnesses in his behalf is not absolute, and is subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297, 313 (1973). Thus we held in *Mendoza v. State*, 552 S.W.2d 444 (Tex.Cr. App.1977), that there is no violation of a defendant's right to compulsory process of witnesses guaranteed by the Sixth and Fourteenth Amendments when the defendant is prevented from calling a witness for the purpose of having the witness invoke the Fifth Amendment in front of the jury.

■ We hold that the trial court did not abuse its discretion in disallowing the defense witness' direct testimony when the witness refused to answer questions on cross-examination which were relevant to the subject matter of the inquiry or which related to the witness' direct testimony. We do not agree with the Court of Appeals that the question asked on cross-examination in the instant case was "collateral" or irrelevant to the issues at trial or to the witness' direct testimony. A "collateral" question is one which seeks only to test the witness' general credibility, or relates to facts irrelevant to the issues at trial.

A question which tests the truthfulness of a witness' testimony by inquiry into the facts and circumstances surrounding the transaction testified to on direct by the witness is not collateral. The question "where did you get the car" in the instant case was relevant to test the truthfulness of the witness' direct testimony that he sold the car to appellant and gave him a title. The answer solicited might have shown that the witness did not have either possession or title to the car, and thus could not have sold the car to appellant, or it might have shown that appellant had notice that the car was stolen.

When the witness refused to answer a question on cross-examination which was germane to his direct testimony, the trial court was not in error in disallowing the witness' testimony. Accordingly,[1] the judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed.

CLINTON, Judge, dissenting.

Drawing on inapposite decisions under Federal law, the majority has fashioned a state rule that is couched in terms far too broadly stated for the narrow problem presented by the action of the trial court, *viz*:

"We hold that the trial court did not abuse its discretion in disallowing the defense witness' direct testimony when the witness refused to answer questions on cross-examination which were relevant to the subject matter of the inquiry or which related to the witness' direct testimony."

P. 365.

In this manner an accused is penalized because a defense witness made the quite independent decision to exercise his own constitutional right against incriminating himself, after being expressly admonished that the witness was free to exercise that very right. The rationale of *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)—due process is denied by enforcement of a state voucher rule to prevent an accused from cross-examining his own witness—does not support the holding of the majority in the case at bar. The rule it creates is more than the State is able

1. The issue treated herein constituted the only ground of error urged on appeal.

to derive from much the same authorities relied on by the majority.[1]

Not only does the new rule constitute a denial of the constitutional right of an accused to present a defense by offering testimony of and evidence from a competent witness, but its application in the case at bar is misplaced. In context of the evidence John Daisey did not refuse to answer relevant questions since they were never asked.

The 1967 Ford Fairlane appellant was convicted of using without authority had been stolen from the residence of David West during the dark hours of January 20–21, 1981.

Before appellant was even implicated in the matter, on January 23, 1981, acting on information supplied by a representative of Market Street Motors, officers went to the Mary Ann Street Apartments and located a "Suburban truck," taken from a complainant other than West, with a Market Street Motors dealer tag on it. One of the two males standing near it claimed ownership— John Daisey. An officer determined the Suburban had been reported stolen, and he arrested Daisey. Several other vehicles at the apartments likewise displayed Market Street Motors tags.

About an hour and a half thereafter, while officers were continuing their original investigation, appellant drove onto the parking lot of the apartment complex in a 1967 Ford Fairlane that David West would later identify as his own. Because it too bore Market Street Motors tags an officer stopped appellant and asked him about how he came by the dealer tags; appellant replied either that he "had gotten" or "had purchased" them from a friend in the apartments. Further, he told the officer that he had himself written on the paper tags data such as "1967 Ford," "J. Keller" as name of buyer, and the serial or VIN number—a number which matched that of the stolen 1967 Ford Fairlane. The tag was admitted without objection as State's Exhibit 1 and passed to the jury.

Turning to the automobile itself, under questioning appellant told the officer he had bought it from a friend; the officer did not ask and appellant did not indicate whether he bought the car and obtained dealers tags from the same friend. He did acknowledge seeing several other dealer plates in the apartment project that he believed "were from the same person." Meanwhile the VIN number of the Fairlane was being checked, and when the dispatcher reported back that it had been stolen, appellant was formally placed under arrest for auto theft.

The Fairlane was searched and a "title" was found in it. The "title" was for the same year model and make, but its VIN number was different. However, a check revealed that the vehicle with that VIN *had not been stolen.* That paper was retained by the police and, upon being identified by the testifying officer, was admitted in evidence as State's Exhibit No. 2 without objection. *It too was passed to the jury.*[2]

F.M. Connor, owner of Market Street Motors, testified that he did not know appellant or James Daisey and never sold appellant a car, that State's Exhibit No. 1 was one of the dealer tags stolen from his office and that he did not sell to J. Keller the vehicle described thereon.

---

1. The State would convert to its own use the rule of *Fountain v. United States,* 384 F.2d 624 (CA 1967) as to when an accused is entitled to subject testimony of an adverse witness to a motion to strike: "it is clear that the State would be unfairly deprived of the ability to test the truth of Daisey's direct testimony if Daisey were allowed to invoke his Fifth Amendment privilege before the jury."

2. Once again we are confronted with an omission from the record of what would seem to be vitally significant exhibits. Neither the dealer tag nor the "title" is in the record before us, though routinely admitted into evidence and made available to the jury. Since the pages of the record are obviously carbon copies, my supposition is that wherever the original statement of facts, there too are State's Exhibits 1 and 2. Would that they were here. Our own examination of State's Exhibit 2 might reveal its real nature and character and thereby clarify some of the otherwise ambiguous testimony about it that has lead to this disagreement among us.

The State rested its case, and appellant's motion for instructed verdict was denied.

R.B. Manning is appellant's stepfather. He testified that shortly before appellant was arrested on the same day, appellant came to Manning's appliance business and, during the course of a conversation (the content of which was first excluded on a hearsay objection by the State), appellant produced *"a registration title for a car,"* [3] State's Exhibit No. 2. Upon looking at it Manning told appellant what had to be done to and with it before "it would be legal." [4] From cross examination by the State we now begin to learn something about that paper everyone called "title," *viz:*

> "Q: Wouldn't you say a title like State's Exhibit No. 2 is a little unusual Mr. Manning?
>
> A: Well, you got an exhibit here which is unusual.
>
> Q: How about on the other side?
>
> A: Well ... it's not been notarized here as I just testified; neither has Jimmy had his signature notarized.
>
> \* \* \* \* \* \*
>
> Q: Weren't you a little bit concerned that he had an unnotarized *open title* that he didn't have his signature on?
>
> A: He said he had just bought the car and I imagine he would have got it signed and notarized if he hadn't been arrested."

Then came the episode with John Daisey. After being admonished by the cautious judge of the trial court, seemingly sua sponte, as indicated by the majority opinion, counsel for appellant, announcing she was going to dispense with "all preliminaries," adduced the following:

> "Q: Did you have occasion in January of this year to enter into a business transaction?
>
> A: I sold Mr. Keller a '67 Ford Fairlane.
>
> Q: And in the course of conducting this sale, did you give to him some document?
>
> A: Yes, ma'am, I gave him a title.
>
> Q: And if I were to show you this title would you be able to identify it as the title that you gave him?
>
> A: Yes, that's the same one?"

Daisey concluded his direct examination by testifying that in exchange for *"this* car and title" appellant "gave him seven hundred dollars."

His testimony on direct was ruled out by the trial court after Daisey testified on cross examination that he was then living at TDC, was there for auto theft and the following occurred:

> "Q: Mr. Daisey, where did you get *this* car?
>
> A: Refuse to answer on the grounds—
>
> THE COURT: That's it. He may not testify."

The prosecutor wanted the record to reflect that "the *defendant* was in the process of taking the Fifth Amendment at this point;" counsel for appellant noted "our exception to the Court's ruling." [5]

As matters stood at the time the testimony of Daisey was ruled out, the State still had the option of seeking conviction for theft of an automobile or unauthorized use of an automobile belonging to Roy D. West,

---

3. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

4. "I told him he had to get it notarized, get his signature before it would be legal. And he had a certain amount of days ... which to put it through to Austin."

5. The following morning, again out of the presence of the jury, the trial judge permitted another counsel for appellant to tender the testimony of Daisey and to present an argument on the law to support that tender. In the ensuing colloquy at one point the judge explained:

> "[Y]ou cannot invoke the Fifth Amendment as part of the responses to question and not as to all. If you're going to invoke your Fifth Amendment Right, you have to invoke them as to everything. That was what was encompassed in the ruling of the Court, and that's going to remain in the ruling of the Court."

the indictment alleged in each instance, "a person having a greater right to possession of the automobile than the defendant." Claiming from the outset of being confronted in possession of a 1967 Ford Fairlane that he had bought it from another, appellant's primary defense was, therefore, that he had a greater right of possession than the party named by the State. Thus, as the court of appeals correctly discerned, "Daisey's testimony was critical to the appellant's defense."

Agreeably with an assertion of the State that "it was crucial to determine whether Daisey had a good title to convey," the majority suggests that an answer to the question posed on cross-examination "might have shown that [he] ... could not have sold the car to appellant" validly. With deference, right of possession in personal property is not always dependent upon the possessor's also having valid title to the property. See *Compton v. State,* 607 S.W.2d 246, 247 (Tex.Cr.App.1980); see also 50 Tex.Jur.2d Rev. 442, "Sales," § 128.[6]

Assuming *arguendo* that in answer to the question Daisey admitted that he had stolen the car, or had acquired it from a third party knowing it had been stolen, still his admission would not implicate appellant until appellant was made aware of either situation. But there is speculation in the majority opinion that Daisey may have answered in such way as to give appellant "notice that the car was stolen." If that is the point, before the newly fashioned rule is applied surely a question to that effect should have been asked and answer refused.

Daisey's refusing to answer the question put to him did not preclude the State from cross examining him about all pertinent aspects of the transaction with appellant— concerning which he did not, and under the law could not then effectively, claim the privilege. Yet, the State never ventured into any aspect of his direct testimony in an effort to test the truth of it, and to explore

other matters pertaining to the transaction. For example, whether Daisey could explain why he was offering to sell a 1967 Ford Fairlane bearing a VIN different from that shown on the incomplete form for transfer of certificate of title (State's Exhibit No. 2), and whether he called that inconsistency to the attention of appellant. For another, since everybody in the courtroom knew the stolen car was worth at least $2300, nothing prevented the State from asking Daisey why he was willing to sell it for $700, and what discussion he had with appellant on that point. Thus, invoking the privilege did not deprive the State of ability to test the truth of Daisey's direct testimony with questions concerning matters with respect to which he had not claimed his privilege.

I respectfully dissent.

TEAGUE and MILLER, JJ., join.

---

6. Failure to comply with statutory requirements regulating sale of motor vehicles may make the purported sale void and prevent title from passing. "This is not to say, however, that no interest passes under such a sale, since on delivery of the automobile the buyer becomes entitled to its possession and cannot be deprived of that right without adjustment of equities."