Delbert Charles PORCHIA, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–94–00121–CR to 05–94–00124–CR.

Court of Appeals of Texas,
Dallas.

May 31, 1995.

Discretionary Review Refused Oct. 4, 1995.

Robert Francis, Dallas, TX, Hal E. Turley, Dallas, TX, for appellant.

Karen R. Wise, Asst. Dist. Atty., Dallas, TX, for appellee.

Before LAGARDE, CHAPMAN, and JAMES, JJ.

## OPINION

LAGARDE, Justice.

Delbert Charles Porchia appeals two convictions for aggravated possession of cocaine

with intent to deliver and convictions for possession of cocaine and aggravated assault. The trial court sentenced appellant to ninety-nine years' imprisonment and a fine of $20,-000 in each of the aggravated possession of cocaine cases, twenty years' imprisonment for possession of cocaine, and ten years' imprisonment for aggravated assault.[1] Appellant brings five points of error contending that the trial court erred by: (1) denying appellant's motions for new trial because ineffective assistance of counsel rendered his pleas of guilty and true involuntary; (2) allowing appellant's trial counsel to assert his Fifth Amendment privilege to *all* his testimony instead of limiting the privilege to testimony concerning criminal conduct; (3) striking all of appellant's trial counsel's testimony; (4) sustaining the State's hearsay objection to appellant's trial counsel's affidavit; and (5) intimidating appellant's trial counsel into not testifying by extensively lecturing him about perjury and unethical conduct. We sustain appellant's second point of error and remand the causes to the trial court to conduct a new hearing on appellant's motions for new trial in light of this opinion.

## PROCEDURAL BACKGROUND

Appellant was indicted for possession of cocaine and for aggravated assault. Appellant pleaded guilty to each indictment.[2] Pursuant to a plea bargain, the trial court deferred adjudication of appellant's guilt and placed him on five years' probation. Subsequently, appellant was indicted twice more for aggravated possession of cocaine. The State moved to adjudicate appellant's guilt in the two previous cases because appellant had violated the terms of his probation by com-

---

1. The written judgments in three of the four cases contain fines different from those in the trial court's oral pronouncement of the sentences in appellant's presence as shown in the statement of facts. In F93–27204–SL and F93–26347–L, the statement of facts shows that the trial court sentenced appellant to 99 years' confinement and a $20,000 fine. The written judgment in F93–27204–SL is consistent with the oral pronouncement of sentence, but the written judgment in F93–26347–L lists a sentence of 99 years' confinement and a *$10,000* fine. In F91–60830–IL and F91–40942–JL, the statement of facts shows that the trial court pronounced sentences in appellant's presence of 20 years' and 10

years' confinement respectively, but the trial court did not pronounce fines in either case. The written judgments list appellant's sentences as 20 years' confinement and a *$368.50* fine in F91–60830–IL and 10 years' confinement and a *$300* fine in F91–40942–JL. Because we are abating the appeals, we do not reach the discrepancy in the fines between the oral pronouncement of the sentences and the written judgments.

2. Appellant was represented at the plea and punishment hearings by his retained attorney, Ray Galvan, Jr.

mitting the new offenses and by testing positive four times for cocaine. Appellant entered open pleas of guilty to the new indictments and open pleas of true to the State's motion to adjudicate the earlier cases.

## The Punishment Hearing

At the punishment hearing on the four cases, Detective David Garcia testified that appellant was a principal distributor of crack cocaine to the crack dealers in the Garland area. Garcia testified that appellant manufactured crack cocaine from powdered cocaine in an apartment. When police officers searched the apartment, they found a rock of crack cocaine sitting on a digital scale, crack cocaine on the floor, and a coating of crack cocaine on the inside of a microwave oven where it had splashed while being "cooked" in the oven. Appellant's thumbprint was found on the battery inside the digital scale.

Appellant testified at the hearing on his own behalf. He testified that he was a crack cocaine user, not a manufacturer or distributor. He stated that he supplied the battery for the scale at the request of the man who sold him crack.

The trial court found appellant guilty in the aggravated possession with intent to deliver cases, adjudicated appellant guilty in the cocaine possession and aggravated assault cases, and sentenced appellant in the four cases as stated above.

## The Motions for New Trial

Through the same attorney, Ray Galvan, Jr., appellant filed a motion for new trial in each case asserting ineffective assistance of counsel at trial. Each motion was supported by the affidavit of appellant's trial counsel, Galvan. In the motions and affidavits, Galvan states that six days before the guilty-plea hearing on the aggravated possession with intent to deliver cases, Galvan heard that appellant had instructed a friend to physically hurt Galvan if appellant were incarcerated.

Two days before the guilty-plea hearing, a detective told Galvan that appellant had put a "contract" on Galvan's life. Galvan stated that these threats affected his psychological and mental condition in a way that rendered him unfit to represent appellant. In spite of this impairment, Galvan did not withdraw from representing appellant.

Galvan also stated in the affidavits that he told appellant that the trial court would not sentence appellant beyond the State's recommended punishment of forty years.[3] Galvan told appellant to reject the State's plea bargain offer of forty years and let the trial court assess appellant's punishment. Galvan said he was fully aware of the full range of punishment but that he never told appellant he could receive more than the State's recommended punishment of forty years.

Galvan also stated that he was unaware of one of the aggravated possession with intent to deliver cases until the day of the guilty-plea hearing and that he failed to investigate or discuss it with appellant prior to the hearing.

## The Hearing on the Motions for New Trial

At the hearing on the motions for new trial, appellant was represented by new counsel. Galvan testified at the hearing about stopping work on the cases after learning of the death threats and about misinforming appellant of the punishment range and of the possible punishment appellant could receive. Galvan then testified that he knew that appellant *did not* have a drug problem but that he told appellant to testify in the punishment hearing that he *did* have a drug problem to win sympathy from the trial court. The trial judge stopped Galvan and told him that he should consult with an attorney before testifying further because he was confessing to suborning perjury.

When the hearing reconvened, Galvan asserted his Fifth Amendment right not to

---

**3.** Other than Galvan's and appellant's testimony at the hearing on the motions for new trial, the record does not show what, if any, plea bargain or recommended punishment the State offered. The State may have made its recommendation during argument at the punishment phase. However, the arguments were not recorded. The transcripts contain plea-bargain forms, but they note that appellant was entering an open plea. No State's recommendation appears on the plea-bargain forms.

incriminate himself and refused to answer questions concerning how he advised appellant to testify. Galvan also refused to answer any non-incriminatory questions about his representation. Because the State had not had an opportunity to cross-examine Galvan, the trial court stated it would exclude all of Galvan's testimony from its consideration in determining the motions for new trial. The trial court also refused to consider Galvan's affidavit attached to appellant's motions for new trial because the affidavit was hearsay.

Appellant testified at the hearing that he relied on Galvan's recommendation to reject the plea-bargain offer of forty years. Appellant stated Galvan told him that if he pleaded open to the trial court, the court would not sentence him to more than forty years. Appellant said Galvan told him that the court would probably sentence appellant to twenty to twenty-five years and that appellant would be out of prison in two years. Appellant also said Galvan told him to tell the judge that he had a drug problem and smoked cocaine even though Galvan knew appellant did not. Appellant stated that he would not have entered an open plea of guilty if he had known that he could be sentenced to more than forty years. On cross-examination, the prosecutor asked appellant why four of appellant's urine samples tested positive for cocaine if appellant did not have a drug problem or smoke cocaine. Appellant explained that those positive results were due to his tasting cocaine he had purchased to give to his friends.

At the close of the hearing, the trial judge stated that he did not find appellant's testimony credible or sufficient to sustain his motions for new trial. With no other evidence before him, having earlier stricken Galvan's testimony from his consideration, the court denied the motions for new trial.

## FIFTH AMENDMENT PRIVILEGE

In his second point of error, appellant contends that the trial court erred in permitting Galvan to assert his Fifth Amendment privilege to *all questions* instead of limiting it to questions concerning incriminating conduct.

■ The State asserts that appellant waived any error by failing to object at trial. However, the record shows that appellant asked the judge not to disallow Galvan's testimony unrelated to the alleged perjury. The trial court refused, ruling that the Fifth Amendment privilege applied to *all* of Galvan's testimony:

> I am not sure I know the answer to whether or not a lawyer witness, being asked a question [that] could impact his right to practice law, doesn't have a Fifth Amendment privilege in relation to that. I think he probably does. That is one reason I sustained the privilege aside from the testimony about the alleged perjury.

We hold that appellant preserved any error from the trial court's refusal to require Galvan to testify about his allegedly incompetent representation other than his suborning perjury.

■ A witness can refuse to answer any question that will subject him to *criminal* liability. *See Garner v. United States,* 424 U.S. 648, 655, 96 S.Ct. 1178, 1182–83, 47 L.Ed.2d 370 (1976). The privilege does not apply to testimony that would be embarrassing, result in an unwelcome disclosure of the witness's personal affairs, or subject the witness to civil penalties. *See United States v. Calandra,* 414 U.S. 338, 353, 94 S.Ct. 613, 622, 38 L.Ed.2d 561 (1974); *Ex parte Butler,* 522 S.W.2d 196, 198 (Tex.1975). Disciplinary proceedings against a lawyer by the State Bar of Texas are civil proceedings, not criminal or even quasi-criminal proceedings. *See McInnis v. State,* 618 S.W.2d 389, 392 (Tex. Civ.App.—Beaumont 1981, writ ref'd n.r.e.), *cert. denied,* 456 U.S. 976, 102 S.Ct. 2242, 72 L.Ed.2d 851 (1982); *Drake v. State,* 488 S.W.2d 534, 536 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). Thus, a witness cannot properly assert the Fifth Amendment privilege on the grounds that the testimony would subject the witness to State Bar disciplinary proceedings. The trial court erred in determining that Galvan could properly use the Fifth Amendment privilege to shield himself from testifying about his noncriminal, allegedly incompetent representation of appellant.

The State argues that the trial court did not err in permitting Galvan to assert his

Fifth Amendment privilege to all his testimony because the State had no opportunity to cross-examine Galvan. The State relies on *Keller v. State*, 662 S.W.2d 362, 365 (Tex. Crim.App.1984). In *Keller*, the appellant was charged with unauthorized use of an automobile. During a hearing outside the jury's presence, the witness for the appellant testified that he sold the car to the appellant. While cross-examining the witness, the prosecutor asked the witness where he obtained the car he sold to the appellant. The witness refused to answer, apparently relying on the Fifth Amendment. The trial court allowed the witness to assert the Fifth Amendment privilege and refused to permit the witness to give any testimony before the jury. Ruling that the issue of where the witness obtained the car was a collateral issue, the court of appeals held that the trial court should not have disallowed the witness's testimony. The court of criminal appeals reversed the court of appeals, holding that the issue was not collateral. The court stated that the issue:

> was relevant to test the truthfulness of the witness' direct testimony that he sold the car to appellant and gave him a title. The answer solicited might have shown that the witness did not have either possession or title to the car, and thus could not have sold the car to appellant, or it might have shown that appellant had notice that the car was stolen.

*Keller*, 662 S.W.2d at 365.

 Procedurally, *Keller* concerns the situation where a defense witness asserts the privilege against self-incrimination for the first time on cross-examination by the State. A criminal defendant has the Sixth Amendment right to call witnesses to testify on his behalf. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). That right, however, is limited by the requirement that the evidence "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302, 93 S.Ct.

at 1049. One of those procedural and evidentiary requirements is that the State have the opportunity to cross-examine defense witnesses. Cross-examination aids the accurate determination of guilt or innocence and the prevention of fraud upon the court. *Keller*, 662 S.W.2d at 364.

The concerns in *Keller* requiring that the witness's entire testimony be barred from the jury do not apply in this case. Here, the State was not prevented from cross-examining Galvan about his noncriminal testimony by Galvan's assertion of the Fifth Amendment privilege; the trial court's *incorrect* extension of that privilege to testimony of noncriminal matters effectively barred the State's cross-examination. Had the trial court ruled correctly on the extent of Galvan's right to the Fifth Amendment privilege, Galvan's assertion of the privilege would have interfered with appellant's ability to present his complete case, but it would not have interfered with the State's ability to cross-examine Galvan about the testimony he had given.

Furthermore, because the hearing in this case was on appellant's motions for new trial, no "accurate determination of guilt or innocence" is at issue. *See Keller*, 662 S.W.2d at 364. The only question before the court was whether appellant could show that his trial counsel was so ineffective that appellant was entitled to a new trial. Appellant's and the State's inability to question Galvan about whether he instructed appellant to lie during the punishment hearing will not interfere with the trial court's ability to determine whether Galvan's testimony of his alleged incompetence entitles appellant to a new trial.

 Because the concerns of *Keller* are not present in this case, *Keller* does not support the trial court's excluding all of Galvan's testimony. We hold that the trial court erred in excluding all of Galvan's testimony. Galvan's Fifth Amendment right not to testify extended *only* to his self-incriminating testimony. He had no right to refuse to testify about his other allegedly incompetent representation of appellant.[4] Considering

---

4. Both appellant's right to present witnesses in

his own defense as well as Galvan's right to

the extent of the ineffectiveness of counsel that Galvan testified to, we cannot conclude beyond a reasonable doubt that the trial court's refusal to consider the evidence and the court's erroneous ruling on the scope of Galvan's Fifth Amendment privilege did not affect the trial court's disposition of the motions for new trial. Accordingly, we find the error harmful. *Cf.* TEX.R.APP.P. 81(b)(2). We sustain appellant's second point of error.[5]

## DISPOSITION

Having sustained one of appellant's points of error, we need not address the remaining points. Pursuant to rule 81(a) of the Texas Rules of Appellate Procedure, we remand these cases to the trial court to allow it to correct its error by conducting a new hearing on appellant's motions for new trial. *See* TEX.R.APP.P. 81(a). Accordingly, in each case, we set aside the notice of appeal and the trial court's order denying appellant's motion for new trial. We set aside only the imposition-of-sentence portion of the final judgments. The sentences can be re-imposed by the trial court following the hearing if the trial court again denies appellant's motions for new trial. Appellant's right of appeal and the appellate timetable attendant thereto are thereby preserved. Of course, if the trial court grants the motions for new trial, re-imposition of sentence is not required. *Haight v. State,* 772 S.W.2d 159, 162 (Tex.App.—Dallas 1989, pet. ref'd).

---

avoid incriminating himself in a judicial setting are fundamental rights. The trial court was required to accommodate both as fully as possible without damaging either right. *See Keller v. State,* 646 S.W.2d 506, 508 (Tex.App.—Houston [1st Dist.] 1982), *rev'd on other grounds,* 662 S.W.2d 362 (Tex.Crim.App.1984).

**5.** We do not intend for our disposition of this point to suggest that the motions for new trial should or should not be granted. That matter remains within the trial court's discretion.