Opinion filed May 23, 2019



# In The

# Eleventh Court of Appeals

_____

## No. 11-17-00118-CR
_____

## JOSE JACINTO AMAYA SOTELO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR24057**

## M E M O R A N D U M   O P I N I O N

After a bench trial, the trial court convicted Jose Jacinto Amaya Sotelo of felony driving while intoxicated and sentenced him to confinement for a term of seven years in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 49.04 (West Supp. 2018). Appellant brings two issues on appeal. Appellant contends that (1) the trial court violated his Sixth

Amendment right to confrontation when it improperly limited Appellant's cross-examination of the State's witness, Jeremy Seider, and (2) the trial court erred when it failed to strike Seider's direct testimony. We affirm.

*Background Facts*

Brownwood Police Officer Jeremy Seider observed a vehicle with a canceled license plate make a wide right turn. Upon stopping the vehicle, Seider identified Appellant as the driver of the vehicle and Carlos Villanueva as a passenger. Seider noticed that Appellant's speech was slurred, as well as Villanueva's speech, and that they both had difficulty finding their identification. Seider spoke to them in English, and Appellant did not appear to have any difficulty communicating with Seider. After Seider asked Appellant to step out of the vehicle, Seider noticed the smell of alcohol and observed Appellant stagger as Appellant walked toward Seider's patrol vehicle. Appellant admitted to Seider that he had consumed "two or three drinks."

Seider conducted a horizontal gaze nystagmus (HGN) test on Appellant. During the test, Appellant continued to move his head after Seider instructed him to move his "eyes only," and he "sway[ed] quite a bit side to side and back and forth." Seider testified that Appellant showed six of six possible clues for intoxication on the HGN test. Seider then gave Appellant the instructions for the walk-and-turn test, but Appellant claimed that he did not understand English. Seider gave the instructions again, partially in Spanish, and Appellant performed the walk-and-turn test. Seider testified that Appellant showed five of eight possible clues for intoxication on the walk-and-turn test.

Seider arrested Appellant and transported him to the Law Enforcement Center where Brownwood Police Officer Jose Contreras administered additional sobriety tests in Spanish. Based on Appellant's performance on those tests, Appellant was

2

taken to the hospital for a blood draw. Because Appellant denied consent for the blood draw, Seider obtained a warrant to conduct the draw.

Officer Contreras testified that he met Seider and Appellant in the Law Enforcement Center parking lot because Seider asked Officer Contreras to give Appellant the instructions for the walk-and-turn and one-leg-stand tests in Spanish. Officer Contreras instructed Appellant in Spanish, and Appellant informed Officer Contreras that Appellant understood. Officer Contreras noticed the following signs of intoxication during Appellant's performance on the walk-and-turn test: Appellant started walking before he received all the instructions, he failed to touch heel to toe a few times, he used his hands for balance instead of keeping them to his side, he did not take the correct number of steps, and he did not turn properly. Officer Contreras also noticed signs of intoxication during Appellant's performance on the one-leg-stand test: Appellant put his foot down twice and he was using his hands for balance. Based on Appellant's performance, Officer Contreras believed that Appellant was intoxicated.

The State also offered into evidence Seider's dashcam recording. The recording captured Appellant driving, Seider stating that the vehicle had the wrong plates, and Appellant admitting that he had been drinking. The recording also captured the field sobriety tests and Appellant's arrest. The trial court later struck the blood draw results because the search warrant affidavit did not reflect the time that Seider observed Appellant driving.

*Analysis*

In his first issue, Appellant contends that the trial court violated his Sixth Amendment right to confrontation when it improperly limited Appellant's cross-examination of Seider. Appellant contends that the trial court should have allowed

3

Appellant to fully cross-examine Seider regarding some pending criminal charges against Seider in Comanche County because they were relevant to show his bias and motive to testify. We disagree.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016) (citing *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011)). A trial judge abuses his discretion when his decision falls outside the zone of reasonable disagreement. *Id.* (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)).

After Appellant's arrest for the underlying offense, but before trial, Seider, along with seven codefendants, was indicted in Comanche County for the following three felony offenses: aggravated assault with a deadly weapon, unlawful restraint, and deadly conduct. All the codefendants were Seider's relatives. At the time of trial, Seider was still under indictment in Comanche County. He was not an active Brownwood police officer because he had been suspended without pay.

At the beginning of trial, the trial court considered Appellant's preliminary inquiry with respect to permitting Seider to testify at trial. Seider indicated that he intended to invoke his Fifth Amendment right against self-incrimination regarding the pending charges in Comanche County. Appellant's counsel asserted that, if the trial court did not allow him to fully cross-examine Seider on the pending charges, Seider should not be permitted to testify. The trial court determined that it would permit Seider to testify and that it would rule on individual questions that Seider might refuse to answer by invoking his Fifth Amendment privilege.

Seider testified that he would not receive any consideration with respect to the charges in Comanche County for testifying in Appellant's case. He acknowledged

4

that he was under indictment and that the charges that he and his relatives were facing were serious. Seider described how he was related to the other codefendants and testified that he would help them if they needed help.

On cross-examination, Seider conceded that, if he was convicted, he would lose his job as a police officer and would possibly go to jail. He testified that being a police officer was a lifelong dream of his and that he ultimately hoped to get his job back at the Brownwood Police Department but that he needed a dismissal or an acquittal of the Comanche County charges. Seider also conceded that sometimes there is a benefit for cooperating with other investigations.

Although Seider answered some questions during cross-examination, Seider invoked the Fifth Amendment privilege numerous times. On two occasions, Seider attempted to invoke his privilege, but the trial court instructed him to answer the questions. However, the trial court refused to compel Seider to answer the following questions, which all addressed the pending charges in Comanche County:

- "What are your feelings about the case in Comanche? Are you concerned about it?"

- "What did you tell your superiors about what had happened over in Comanche . . . ?"

- "During [your] statement with [the Texas] Ranger . . . did you have specific discussions about your other family members who were involved in this?"

- "[I]n the statement did you describe what roles everyone played in what happened . . . ?"

- "Were there guns involved in the charge?"

5

- "Did you have a weapon . . . ?  [D]id you have a gun when you and the other seven - -"

- "Did you have your service weapon with you at that time?"

- "Were you wearing your badge at the time this happened?"

- "Were you wearing your uniform when this happened?"

- "[W]ere you holding yourself out as someone involved in law enforcement when you showed up that day?"

- "Who shot into the back of the car as it drove away?"

- "Were you a part of . . . an interrogation while people restraining some other folks; some of the group were talking to someone trying to get answers to some questions?  Were you part of the group that was doing the interrogating?"

The trial court explained its reasoning for refusing to compel Seider to answer these questions: "I will allow certain pointed questions . . . if there's something that would rise to the level of showing either some bias or some other issue . . . , but I'm not going to just open it up to 'Tell me what you know about this case and the underlying facts.'"  Appellant later moved to strike Seider's direct testimony based upon Seider's invocation of his Fifth Amendment privilege.  The trial court denied Appellant's request.

The State called Comanche County District Attorney Adam Sibley as a witness.  He testified that he did not have a deal with Seider for any consideration if Seider testified in Appellant's case.  Sibley further testified that he would not be willing to enter into any future agreements with Seider.  Sibley stated that Seider provided a statement to a Texas Ranger regarding the pending charges and conceded

that Seider was cooperative. However, Sibley believed that, when Seider made this statement, Seider withheld facts relevant to the investigation and had not volunteered to provide any additional information.

In a bill of exception, Sibley testified about the facts of Seider's pending charges. Sibley testified that he believed that Seider withheld the identity of the shooter from the Texas Ranger to protect the family member who shot the gun. Although the charges were serious, Sibley had offered all the codefendants probation, but none had accepted.

The Sixth Amendment to the U.S. Constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. U.S. CONST. amend. VI; *Id.* at 909. "The main purpose behind the Confrontation Clause is to secure for the opposing party the opportunity of cross-examination because that is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" *Johnson*, 490 S.W.3d at 909 (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). The Sixth Amendment right to cross-examine a witness allows a party to attack the general credibility of that witness or to show their possible bias, self-interest, or motives in testifying. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). However, a trial judge may limit the scope and extent of cross-examination, so long as those limits do not operate to infringe upon the Confrontation Clause's guarantee of an opportunity for effective cross-examination. *Johnson*, 490 S.W.3d at 909 (citing *Johnson v. State*, 433 S.W.3d 546, 551 (Tex. Crim. App. 2014)). A trial judge retains wide latitude to impose reasonable limits on such cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, marginally relevant evidence, or where the subject of the examination has been exhausted. *Irby v. State*, 327 S.W.3d

138, 145 (Tex. Crim. App. 2010) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

This appeal involves a common scenario—an attempt to impeach a prosecution witness by cross-examining him about criminal charges pending against him. *See Johnson*, 433 S.W.3d 551–53. A defendant may elicit on cross-examination facts intended to demonstrate a witness's vulnerable relationship with the State or to show a witness's bias. TEX. R. EVID. 613(b); *Carroll v. State*, 916 S.W.2d 494, 500 (Tex. Crim. App. 1996). "Exposing a witness's motivation to testify for or against the accused or the State is a proper and important purpose of cross-examination." *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). Parties are allowed great latitude to show "any fact which would or might tend to establish ill feeling, bias, motive and animus on the part of the witness." *Id.* (quoting *London v. State*, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987)). "In order to impeach a witness with evidence of pending criminal actions, the proponent of the evidence must establish that the evidence is relevant." *Id.* (citing *Carroll*, 916 S.W.2d at 494; *London*, 739 S.W.2d at 846–48).

The right to cross-examine is not unqualified. *Johnson*, 490 S.W.3d at 909. "A trial judge may limit the scope and extent of cross-examination, so long as those limits do not operate to infringe upon the Confrontation Clause's guarantee of 'an opportunity for effective cross-examination.'" *Id.* (quoting *Johnson*, 433 S.W.3d at 552). "The defendant is not entitled to 'cross-examination that is effective in whatever way, and to whatever extent,' he might wish." *Id.* (quoting *Johnson*, 433 S.W.3d at 552).

This is a not a case where the trial court prohibited Appellant from making any reference to the pending criminal charges against Seider during his cross-

examination as was the case in *Carpenter* and *Irby*. *Irby*, 327 S.W.3d at 140; *Carpenter*, 979 S.W.2d at 633–34; *see Johnson*, 433 S.W.3d at 553 (discussing *Carpenter* and *Irby*). To the contrary, the trial court permitted Appellant to obtain answers from Seider pertaining to the general nature of the charges in Comanche County, the ramifications of the pending charges on his employment as a Brownwood police officer, and the possibility that Seider would obtain some benefit from testifying in Appellant's case. Furthermore, the Comanche County District Attorney offered additional testimony about the nature of the Comanche County charges pending against Seider. A copy of the indictment against Seider from Comanche County was admitted into evidence during Sibley's testimony. Accordingly, the trial court permitted Appellant to explore areas indicating possible bias by Seider to "curry favor" with the State by offering testimony against Appellant. *See Johnson*, 433 S.W.3d at 554–55.

Conversely, the trial court did not require Seider to answer questions from Appellant's trial counsel about some of the details of his pending charges in Comanche County. In this regard, Seider invoked his Fifth Amendment privilege against self-incrimination. There is no allegation that Seider improperly invoked his Fifth Amendment privilege or waived it. When a defendant's Sixth Amendment rights intersect with a witness's Fifth Amendment privilege, "[a] valid assertion of the witness's Fifth Amendment rights justifies a refusal to testify despite the defendant's Sixth Amendment rights." *United States v. Ramos*, 537 F.3d 439, 448 (5th Cir. 2008) (quoting *United States v. Goodwin*, 625 F.2d 693, 700 (5th Cir. 1980)); *see Bridge v. State*, 726 S.W.2d 558, 567 (Tex. Crim. App. 1986) (an individual's constitutional privilege against self-incrimination overrides a defendant's constitutional right to compulsory process of witnesses). Furthermore,

9

even if Seider had been convicted of the offenses for which he was indicted in Comanche County, the details of those offenses would not be admissible. *See Mays v. State*, 726 S.W.2d 937, 953 (Tex. Crim. App. 1986) ("[A]lthough the fact that a witness has been previously convicted of a crime may be introduced into evidence, the details of that offense are inadmissible."); *Andrews v. State*, 429 S.W.3d 849, 858 (Tex. App.—Texarkana 2014, pet. ref'd).

We conclude that the trial court did not err by permitting Seider to invoke his Fifth Amendment privilege to the questions that Appellant sought to ask him on cross-examination. As previously noted, Seider's Fifth Amendment privilege prevails over Appellant's Sixth Amendment rights. Furthermore, the questions to which the trial court permitted Seider to invoke his Fifth Amendment privilege were not necessary to further expound upon his potential bias as a witness for the State because there were already ample details before the trial court about the pending charges in Comanche County. We overrule Appellant's first issue.

In his second issue, Appellant contends that the trial court erred when it failed to strike Seider's direct testimony. When a witness invokes his Fifth Amendment right against self-incrimination during cross-examination, "all or part of that witness's direct testimony may be subject to a motion to strike." *Fountain v. United States*, 384 F.2d 624, 628 (5th Cir. 1967); *see Keller v. State*, 662 S.W.2d 362, 364 (Tex. Crim. App. 1984). The "ultimate inquiry is whether the defendant has been deprived of his right to test the truth of the direct testimony." *Fountain*, 384 F.2d at 628. "If he has, so much of the direct testimony as cannot be subjected to sufficient inquiry must be struck." *Id.* If the witness invokes the privilege only as to collateral matters, however, direct testimony need not be struck. *Id.* A collateral question is

one that seeks only to test a witness's general credibility or relates to facts that are irrelevant to the issues at trial. *Keller*, 662 S.W.2d at 364.

The underlying facts of the pending charges against Seider were collateral matters in relation to the allegation that Appellant committed felony driving while intoxicated. Seider did not refuse to answer questions on cross-examination pertaining to the allegations against Appellant. The pending criminal charges in Comanche County sought to test Seider's general credibility by showing bias on his part. As such, they concern a collateral matter. Thus, the trial court did not err in refusing to strike Seider's direct testimony. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


May 23, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.