**Vickie Dickerson DAVIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–95–00285–CR.**

Court of Appeals of Texas, Tyler.

June 19, 1997.

Rehearing Overruled July 25, 1997.

Discretionary Review Refused Nov. 26, 1997.

15

Douglas Scott Williams, Athens, for appellant.

Leslie Poynter Dixon, Canton, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

The Appellant, Vickie Dickerson Davis ("Appellant"), appeals her jury conviction for the offense of attempted murder wherein the jury assessed her punishment at twenty (20) years' imprisonment. Five points of error are assigned. We will reverse and remand.

Appellant does not contest the sufficiency of the evidence. In order to view the case in proper context, however, we will briefly survey the evidence. On June 18, 1993, Appellant shot her husband Gerald Davis ("Gerald"). At the time of the shooting, Gerald and Appellant were 53 years old and 38 years old, respectively. They had been married for several years, and the marriage was Appellant's fifth and Gerald's second. The circumstances surrounding the shooting were contested. The version most favorable to the verdict shows that approximately one year before the accident, Gerald was earning $5,000.00 to $6,000.00 dollars a month as a

conductor for the railroad. After a disabling car accident, he drew disability payments of less than half of his original pay, and he was unable to drive. Appellant had not consistently worked during the marriage, and she was in poor health. On the day of the shooting, Appellant met with Gerald's former wife at the VFW hall. After they had a few drinks, Appellant asked the ex-wife how she had been able to get Gerald out of their house after they were divorced. The ex-wife told her that it had not been a problem. Appellant admitted to being concerned that if she divorced Gerald, he would want to take back some items he had given her children and leave her with essentially nothing. When Appellant arrived home around 5:00 p.m., Gerald was outside cooking a brisket for their evening meal. Appellant went into their bedroom and took Gerald's .44 magnum revolver out of a bedside table drawer, bypassing her own .22 caliber pistol. Appellant walked out onto the patio, and seeing that Gerald was facing away from her, shot him four times. After the shooting, she sat down and waited several hours before calling the ambulance. Gerald survived the shooting.

Appellant testified that her marriage was marred by violence, alleging that Gerald was physically and sexually abusive. Appellant had previously undergone open heart surgery, and she claimed that Gerald knew about it and pushed and hit her chest. She also claimed that Gerald bit her around her genital area while having sex. In addition, Appellant alleged that Gerald had struck her son with a baseball bat. She further testified that on the day in question, Gerald was intoxicated and held a knife to her throat when she returned home from the VFW. As a consequence of her fear, she decided to leave him. Appellant secured the gun for protection, frightened that Gerald would do her bodily harm when she attempted to leave. She claimed that when she started to leave, Gerald came towards her and she shot him. She did not clearly remember the rest. The court charged the jury on Appellant's right of self-defense, but the jury rejected this argument.

In her first point of error, Appellant contends the trial court erred when it overruled her objection to an improper jury argument by the State in which the prosecutor commented on the non-testimonial demeanor of Appellant.

During the State's closing argument, the prosecutor stated the following:

PROSECUTOR DIXON: And who is his attacker. His attacker is his wife. That woman right over there and she was grinning. And Mr. White stands up and says, I can't imagine, you know, anybody on the one hand grinning and then going to get the towels.

Well, ladies and gentlemen, you have sat here and you've watched that woman and you've listened to that woman testify and I'm sure you saw just like I that woman up on the stand boo-hooing and crying but never once shedding a tear. And I'm sure you saw that woman go into near hysterics when she's displayed a photograph with a bloody towel. *But I'm sure that you saw her when that man, her husband, the shell of the man that she married came into this courtroom and removed his shirt and displayed her handiwork. I'm sure you saw just like I saw that she didn't even twitch an eye. She didn't twitch an eye.* (Emphasis in original)

DEFENSE ATTORNEY WHITE: Your Honor, that's argument that's not in evidence. And the actions of people in the courtroom are not admissible. I object to the State making that type of argument because it's strictly prejudicial and inflammatory for no particular reason.

THE COURT: Very well. Anything that the jury had an opportunity to observe, it will be admitted.

WHITE: Your Honor, is the court overruling my objection?

THE COURT: It's overruled.

Appellant argues that the prosecutor's unsworn jury argument focused the jury's attention on Appellant's non-testimonial demeanor, and urged the jury to convict her on facts outside the record rather than on evidence of guilt. Furthermore, Appellant contends that the prejudicial statement was magnified when the court authorized it.

Conversely, the State claims that Appellant invited the comments when defense counsel improperly expressed his personal opinion during final argument. The State complains that defense counsel questioned the credibility of Gerald's testimony regarding Appellant's actions at the time of the shooting. Appellant's attorney made the following comments during his final argument:

He [Gerald] said that he heard a shot, turned around and saw Vickie smiling with a pistol. Sometimes you see what you want to see. It's hard for me to picture someone shooting another person smiling about it. And then turning around and getting hysterical over it or dazed or trying to do anything to help them after they were shot.

The State admits that its argument concerning Appellant's courtroom demeanor would normally be considered improper, and would only be permissible if made in response to an improper argument by the defense counsel. The State reasons that since defense counsel exceeded the scope of admissible argument by injecting his personal opinion about the case it was acceptable. We do not agree.

■ Proper jury argument must fall within at least one of the following four areas: 1) summation of the evidence; 2) reasonable deduction from the evidence; 3) answer to argument of opposing counsel; or 4) plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Cr.App.1973). The State must confine its jury argument concerning defendant's guilt to statements based upon properly admitted evidence. *Campbell v. State*, 610 S.W.2d 754, 757 (Tex. Cr.App.1980). It is improper for the prosecutor to argue facts not in evidence. *Jones v. State*, 151 Tex.Crim. 115, 205 S.W.2d 590, 592 (1947). The use of the defendant's non-testimonial courtroom behavior to establish guilt violates the fundamental requirement that the defendant be convicted only upon relevant evidence. *Good v. State*, 723 S.W.2d 734, 737 (Tex.Cr.App.1986). Thus, even though a prosecutor may comment on the defendant's non-testimonial demeanor if it occurs during testimony, it is improper to ask the jury to convict based upon the defen-

dant's non-testimonial courtroom demeanor. *Id.*

■ We do not agree with the State's position that defense counsel's statement as to the incredulous nature of Gerald's version of the events can reasonably be construed as inviting the State's objectionable argument that Appellant's failure to respond when she saw Gerald's scars in the courtroom was proof of guilt. Furthermore, the jury argument was not a plea for law enforcement, was not a summary of the evidence, nor did it constitute a reasonable deduction from the evidence. The State's argument, moreover, was clearly designed to strengthen its case against the defendant, and was therefore calculated to prejudice the jury by matters not properly before them. We hold that the State's argument constitutes error.

■ Having determined that the State's jury argument was improper, we must now conduct a harm analysis under TEX. R. APP. P. 81(b)(2). The applicable legal standard of review is whether, in light of the record as a whole, there is a reasonable possibility the improper argument might have contributed to Appellant's conviction. *Denton v. State*, 920 S.W.2d 311, 312 (Tex.Cr.App.1996). In applying this standard of review, we do not look for overwhelming evidence of guilt, because it is improper for an appellate court to substitute its judgment for that of the fact-finder. *Harris v. State*, 790 S.W.2d 568, 585 (Tex.Cr.App.1989). Instead, we focus on the error and its possible impact. *Id.* at 586–88. "If the error was of a magnitude that it disrupted the [factfinders'] orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is tainted." *Id.* at 588.

■ To perform a harmless error analysis, an appellate court should consider the following factors: 1) the source of the error; 2) the nature of the error; 3) whether the error was emphasized and its probable collateral implications; 4) the weight a juror would probably place upon the error; and 5) whether declaring the error harmless encouraged the State to repeat it with impunity. *Orona v. State*, 791 S.W.2d 125, 130 (Tex.Cr.App. 1990).

In the instant case, the source of error was the prosecutor calling the jury's attention to Appellant's neutral courtroom demeanor and contrasting it to Appellant's comportment on the witness stand. The State was, by implication, offering unsworn and inadmissible testimony of Appellant's credibility and guilt. The prosecutor called upon the jury to determine whether or not, based upon her courtroom demeanor, Appellant was exercising her right of self defense when she shot Gerald. And the trial court, by overruling a timely and appropriate objection, put "the stamp of judicial approval" on the improper argument, thus magnifying the possibility for harm. We conclude declaring this type of error harmless would lead the State to repeat such tactics. *Wilson v. State,* 938 S.W.2d 57, 62 (Tex.Cr.App.1996). Therefore we cannot conclude beyond a reasonable doubt that there is a reasonable probability that the State's improper argument did not contribute to Appellant's conviction. Appellant's first point of error is **sustained.**

Since this case is being returned to the trial court for a new trial, there is no need to address Appellant's remaining points of error.

The judgment of the trial court is **reversed and remanded for a new trial.**