ACCEPTED
12-14-00368-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
5/1/2015 4:57:27 AM
CATHY LUSK
CLERK

**Oral Argument Requested**

**IN THE COURT OF APPEALS
FOR THE TWELFTH DISTRICT OF TEXAS
TYLER, TEXAS**

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

5/1/2015 4:57:27 AM

CATHY S. LUSK
Clerk

JOHN CALVIN MARSHALL, §
    **Appellant** §
    §
**VS.** §     NO. 12-14-00368-CR
    §
    §
THE STATE OF TEXAS, §
    **Appellee** §

**ON APPEAL FROM THE
294TH JUDICIAL DISTRICT COURT
OF VAN ZANDT COUNTY, TEXAS
NO. CR11-00070
PRESIDING JUDGE TERESA DRUM**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**APPELLANT'S BRIEF**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEAN WHITE**
**State Bar Number 21299500**

**DEAN WHITE**
**ATTORNEY AT LAW**
**690 WEST DALLAS**
**CANTON, TEXAS 75103**
**PHONE: (903) 567-4155**
**FAX: (903) 567-4964**
**EMAIL: dwatty@etcable.net**
**ATTORNEY FOR APPELLANT**

**NOLAN D. WHITE**
**State Bar Number 24039238**

**NOLAN D. WHITE**
**ATTORNEY AT LAW**
**690 WEST DALLAS**
**CANTON, TEXAS 75103**
**PHONE: (903) 567-4155**
**FAX: (903) 567-4964**
**EMAIL: nwatty@etcable.net**
**ATTORNEY FOR APPELLANT**

## IDENTITY OF PARTIES AND COUNSEL

**APPELLANT:**

JOHN CALVIN MARSHALL

**APPELLANT'S TRIAL AND APPELLATE COUNSEL:**

Dean White
690 West Dallas
Canton, Texas 75103
Phone: (903) 567-4155
Fax: (903) 567-4964
Email: dwatty@etcable.net

Nolan D. White
690 West Dallas
Canton, Texas 75103
Phone: (903) 567-4155
Fax: (903) 567-4964
Email: nwatty@etcable.net

**APPELLEE'S TRIAL COUNSEL**

Chris Martin
Van Zandt County Criminal District Attorney
400 S. Buffalo
Canton, Texas 75103
Phone: (903) 567-4104
Fax: (903) 567-6258
Email: chrismartin@vanzandtcounty.org

Richard Schmidt
Assistant Van Zandt County Criminal District Attorney
400 S. Buffalo
Canton, Texas 75103
Phone: (903) 567-4104
Fax: (903) 567-6258
Email: rschmidt@vanzandtcounty.org

Allison Flanagan
Assistant Van Zandt County Criminal District Attorney
400 S. Buffalo
Canton, Texas 75103
Phone: (903) 567-4104
Fax: (903) 567-6258
Email:aflanagan@vanzandtcounty.org

# TABLE OF CONTENTS

**Page**

PARTIES TO THE CAUSE......................................................................................... i

TABLE OF CONTENTS............................................................................................ ii-iii

INDEX OF AUTHORITIES.........................................................................................iv -v

STATEMENT OF THE CASE....................................................................................2

ISSUES PRESENTED.............................................................................................. 3

Issue One:  The trial court erred by denying John Calvin Marshall's motion to suppress statements under Fifth, Sixth, and Fourteenth Amendments to the United State Constitution and under Article 38.22 of the Texas Code of Criminal Procedure.

Issue Two:  The trial court erred by permitting th State to introduce 404(b) evidence concerning Jean Mullins.

Issue Three: The trial court erred by excluding relevant evidence, of which the testifying witness had personal knowledge, that was material to John Calvin Marshall's defense.

Issue Four:  John Calvin Marshall's Sixth Amendment and Fourteenth Amendment rights to the United States Constitution were violated by not allowing him to present a defense.

Issue Five:  The State made an improper jury argument, by asking the jurors to put themselves in the place of the complainant, that was not cure by the trial court's instruction.

STATEMENT OF THE FACTS............................................................................... 4-5

SUMMARY OF THE ARGUMENT......................................................................... 6-7

ISSUES PRESENTED WITH ARGUMENTS AND AUTHORITIES

Issue One, Restated...............................................................................7

A. Applicable Law........................................................................7-8
B. Analysis of Fact in this Case................................................9-10

Issue Two, Restated......................................................................................11

    A. Applicable Law......................................................................11-12
    B. Analysis of Fact in this Case...........................................13-17

Issue Three, Restated...............................................................................18
Issue Four, Restated................................................................... ..18
    A. Applicable Law......................................................................18-20
    B. Analysis of Fact in this Case...........................................20-22

Issue Five, Restated..................................................................................22

    A. Applicable Law......................................................................22-23
    B. Analysis of Facts in this Case..........................................23-24


PRAYER FOR RELIEF............................................................................ 24

CERTIFICATE OF SERVICE....................................................................26

CERTIFICATE OF WORD COUNT..........................................................26

# INDEX OF AUTHORITIES

**CASES**                                                                                           **PAGE**

*Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)..................................................................19

*Chandler v. State*, 689 S.W.2d 332, 334 (Tex. App– Ft. Worth 1985, no pet.).............22

*Davis v. State*, 964 S.W.2d 14, 18 (Tex. App.– Tyler 1997)..........................................23

*Draheim v. State*, 916 S.W.2d 599 (Tex. App.– San Antonio 1996, pet. ref'd).............18

*Garrett v. State*, 632 S.W.2d 350, 353 (Tex. Crim. App. 1982)....................................23

*Gigliobianco v. State*, 210 S.W.3d 637 (Tex. Crim. App. 2006)....................................12

*Johnson v. State*, 352 S.W.3d 224, 233 (Tex. App.–Houston [14th Dist.] 2011)............19

*Keller v. State*, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984)......................................19

*Kelly v. State*, 204 S.W.3d 808 (Tex. Crim. App. 1997)...................................................8

*Kelly v. State*, 321 S.W.3d 583, 592 (Tex. App.– Houston [14th Dist.] 2010.................19

*Miles v. State*, 61 S.W.3d 682, 686 (Tex. App.– Houston [1st Dist.] 2001, pet. ref'd)...18

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990) .........................11,12,13

*Plante v. State*, 692 S.W. 2d 487, 491 (Tex. Crim. App. 1985) quoting
*Waldrop v. State,* 133 S.W.2d 969, 970 (1940).............................................................18

*Ransom v. State*, 920 S.W.2d 288 (Tex. Crim. App. 1996)..........................................11

*Rich v. State*, 160 S.W.3d 575, 577-78 (Tex. Crim. App. 2005)..................................11

*Russell v. State*, 113 S.W.3d 530 (Tex. App.– Ft. Worth 2003, pet. ref'd.)...................11

*State v. Gobert*, 275 S.W.2d 888 (Tex. Crim. App. 2009)..............................................8

*Thomas vs. State*, 578 S.W.2d 691, 695 (Tex. Crim. App. 1979)................................22

*Tillman v. State*, 376 S.W.3d 188, 198
(Tex. App. – Houston [14th Dist.] 2012, no pet.).............................................................19

*Washington v. Texas*, 388 U.S. 14, 19 (1967)...............................................................19

*Webb v. Texas*, 409 U.S. 95 (1972)........................................................................ 19

*Wheeler v. State*, 67 S.W.3d 879 (Tex. Crim. App. 2002).........................................11,13

*Williams v. State*, 402 S.W.3d 425 (Tex. App.– Houston [14th Dist.] 2013, pet. ref'd)...19

*Woodruff v. State*, 330 S.W.3d 709, 724 (Tex. App.– Texarkana 2010) cert. denied.
*Woodruff v. Texas*, 132 S. Ct. 502 (2011).................................................................8

## CODE AND RULES

TEX. R. APP. P. 44.2(a)................................................................................19

TEX. R. APP. P. 44.2(b)........................................................................... 13, 19

TEX. R. EVID. 403.................................................................................... 11

TEX. R. EVID. 404.................................................................................... 12

TEX. R. EVID. 412.................................................................................... 18

TEX. R. EVID. 503.....................................................................................8

TEX. R. EVID. 602....................................................................................18

## CONSTITUTION

U.S. Const.  Amend. V............................................................................. 7, 8

U.S. Const.  Amend. VI........................................................................... 7,8,19

U.S. Const.  Amend. XIV......................................................................... 7,8,19

## STATUTES

TEX. CRIM. PROC. ART. 38.22.................................................................. 7

# IN THE COURT OF APPEALS
## FOR THE TWELFTH DISTRICT OF TEXAS
## TYLER, TEXAS

JOHN CALVIN MARSHALL,  §
        Appellant  §
        §
VS.  §        NO. 12-14-00368-CR
        §
        §
THE STATE OF TEXAS,  §
        Appellee  §

## ON APPEAL FROM THE
## 294TH JUDICIAL DISTRICT COURT
## OF VAN ZANDT COUNTY, TEXAS
## NO. CR11-00070
## PRESIDING JUDGE TERESA DRUM

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## APPELLANT'S BRIEF

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TO THE HONORABLE COURT OF APPEALS AND THE JUSTICES THEREOF:

John Calvin Marshall, ("Appellant"), by and through his attorneys of record, Dean White

and Nolan D. White, and pursuant to the provisions of TEX. R. APP. PROC. 38, et seq.,

respectfully submits this brief on appeal.

1

## STATEMENT OF THE CASE

The Grand Jury for Van Zandt County July Term, 2011 A.D. indicted John Calvin Marshall for the offense of Burglary of a Habitation. CR 11.[1]  Mr. Marshall filed a motion to suppress (CR 21-22) and the trial court held a hearing on that motion on May 22, 2012. The trial court filed its order overruling Mr. Marshall's motion to suppress on August 20, 2012. CR 37-38. Mr. Marshall also filed a motion in limine concerning prior convictions and extraneous offenses (CR 12-14)  which the court granted. CR 55. On September 30, 2014 the trial court called Mr. Marshall's case to trial CR 7. Mr. Marshall entered a plea of not guilty before a jury to the charge offense. RR 28.[2]  The jury found John Calvin Marshall guilty of the offense of Burglary of a Habitation with intent to commit sexual assault as charged in the indictment. RR 61

Mr. Marshall elected to have the jury assess his punishment. CR 51. The jury sentenced Mr. Marshall to 25 years confinement in the Texas Department of Criminal Justice and  assessed a $10,000 fine. CR 77 Mr. Marshall filed a motion for new trial on and the motion for new trial was overruled as a matter of law. CR 86-88. Mr Marshall timely filed a notice of appeal on December 30, 2014. CR 90.

---

[1]  References to the Clerk's Record are designated "CR" with a roman numeral preceding "CR" indicating the correct volume and an arabic numeral following "CR" specifying the correct page in the record.

[2]  References to the Reporter's Record are designated "RR" with a roman numeral preceding "RR" indicating the correct volume and an arabic numeral following "RR" specifying the correct page in the record.

## ISSUES PRESENTED

Issue One:    The trial court erred by denying John Calvin Marshall's motion to suppress on United States Constitution, Texas Constitution, and Texas Statutory violations.

Issue Two:    The trial court erred by permitting the State to introduce 404(b) evidence concerning Jean Mullins

Issue Three:  The trial court erred by excluding relevant evidence of which the testifying witness had personal knowledge that was material to John Calvin Marshall's defense.

Issue Four:   John Calvin Marshall's Sixth Amendment and Fourteenth Amendment rights to the United States Constitution were violated by not allowing him to present a defense.

Issue Five:   The State made an improper jury argument, by asking the jurors to put themselves in the place of the complainant, that was not cure by the trial court's instruction.

**STATEMENT OF FACTS**

On April 23, 2011, John Calvin Marshall, who was seventy years old entered the home of Carolyn Walter.[3] IV RR 118.  Ms. Walter is a registered dental assistant. IV RR 10. She was a casual acquaintance of Mr. Marshall. IV RR 105 Mr. Marshall had been a patient at the office where Ms. Walter worked. IV RR 11. Ms. Walter had lived down the road from Mr. Marshall and his wife when she moved to Canton 29 years ago and she had also cleaned house for Mrs. Marshall. IV RR 15. Mr. Marshall had never been inappropriate with Ms. Walter at her work. IV RR 16.  When Ms. Walters saw Mr. Marshall in her home, he told Ms. Walters that he had always been interested in her. IV RR She asked Mr. Marshall to leave and he then started pushing her backwards to her bedroom which was 20 or 25 paces away. IV RR 18. He was not acting menacing and had a firm grip on her shoulders. IV RR 18. She was in disbelief because her husband had cheated on her and she would never put herself in that situation. IV RR 19. The situation of being the other woman. IV RR 59. Mr. Marshall was kind of taking both of their clothes off. IV RR 20. Mr. Marshall pushed her on the bed in the bedroom. IV RR 21. Mr. Marshall's penis was not erect.  IV RR 23. Mr. Marshall was not able to penetrate her.  IV RR 23. Ms. Walter made fun of Mr. Marshall because he could not get it up and made fun of the size of his penis.  IV RR 24, 49. Mr. Marshall arrived at the Ms. Walter's residence at 11:30 and left at 12:01.  IV RR 47. Ms. Walter said that Mr. Marshall had his arm across her chest for 20 minutes and it took him nearly 10 minutes to get dressed.  IV RR 48. Ms. Walter watched him put on his clothes.  IV RR 50. Ms. Walter followed Mr. Marshall outside partially clothed.  IV RR 52-53. Ms. Walter

---

[3]  The indictment alleges the pseudonym of "Kay Jackson." The victim's name was Carolyn Walter, but at the time of trial Ms. Walter had remarried and went by the name Carolyn Herriage. She will be referred to as Carolyn Walter in this brief.

was yelling and screaming. IV RR 69. She did not yell for Gloria or Enrique Guerra IV RR 59. She did not try to escape to the Guerra's home or to the business located in close proximity IV RR 50. Enrique and Gloria Guerra had told Ms. Walter earlier in the day they would be out fixing the fence located between their homes. IV RR 72. Enrique Guerra was outside working on the fence in the morning and early afternoon and did not hear any yelling. II RR 15. Gloria Guerra was working on the fence and she did not hear any yelling. II RR 24. Ms. Walter returned inside and made several phone calls, but she did not call the police. IV RR 59, 62. She drank a glass and a half of wine and apparently went to sleep. IV RR 27-28. Ms. Walter contacted her son's friend, Matthew Jackson, who lives in Amarillo, Texas. II RR 200. Ms. Walter contacted Mr. Jackson around 12:00 to 2:00. II RR 213. After speaking with Ms. Walter, Mr. Jackson became concerned and he told Ms. Walter to contact the police and she did not. II RR 204. Mr. Jackson contacted the police. II RR 204. Canton Police Department dispatched Sergeant Steve Hall to investigate a possible sexual assault at 1230 Big Rock Street. II RR 36. Ms. Walter indicated that she did not want to talk with Sergeant Hall. II RR 38, 40. Sergeant Hall contacted Detective Michael King and Detective King arrived about an hour after Sergeant Hall had arrived at the scene. II RR 41. Other people started arriving on the scene including Jean Mullins and Carla Ward as well as members of Ms. Walter's family. II RR 48. Ms. Walter would not identify the person would had allegedly assaulted her. II RR 50. Jean Mullins eventually spoke with Ms. Walter and convinced her to talk to the police IV RR 29. Ms. Walter then spoke with Detective King of the Canton Police Department and gave him her story IV RR 31.[4]

---

[4] Additional facts will be addressed as appropriate in the Issues Restated with Argument and Authorities.

## SUMMARY OF THE ARGUMENT

**Issue One:**

The trial court erred by denying John Calvin Marshall's Motion to Suppress Statement. Mr. Marshall requested an attorney after he was read the required warnings under Article 38.22. Detective King recorded the warning as required. After Mr. Marshall requested to speak with an attorney, Detective King continued to record Mr. Marshall even though he knew Mr. Marshall was attempting to contact an attorney. These actions violated Mr. Marshall's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and under Article 38.22 of the Code of Criminal Procedure..

**Issue Two:**

The State proffered alleged 404(b) evidence through its witness Jean Mullins. She alleged Mr. Marshall had made an unwanted advances towards her, touched her in an inappropriate manner and appeared at her place of work and on the street where she lived uninvited. These alleged actions were a focal point of the State's case as it introduced the testimony of Ms. Mullins prior to Carolyn Walter's, the victim, even testifying. Ms. Mullins' testimony invited the jury to convict Mr. Marshall on improper character evidence. The trial court failed to conduct a proper balancing test.

**Issue Three and Four:**

The trial court did not allow Martha Wetherholt, a former co-worker of Carolyn Walter, to testify. Martha Wetherholt's testimony was relevant and based on her personal knowledge. The State had elicited testimony of the Carolyn Walter's general demeanor and conduct prior to the events on April 23, 2011. The State also introduced evidence of a DNA analysis that showed the presence of an additional contributor. Additionally,

6

the State introduced a custodial statement made by Mr. Marshall describing the alleged victim as being "crazy". The trial used this statement, in part, to justify its admitting 404(b) evidence against Mr. Marshall. Mr. Marshall had no chance to rebut or further explain the evidence presented by the State. The trial court's ruling denied Mr. Marshall the valuable right to present a defense on his own behalf.

**Issue Five:**

The State made an improper jury argument when it asked the jurors to put themselves in the place of the complainant. The trial court sustained Mr. Marshall's objection and granted his request to instruct the jury to disregard the statement. The trial court overruled Mr. Marshall's request for a mistrial. The State immediately made a statement on similar line of argument to which Mr. Marshall objected. The court overruled the objection. Given the 404(b) evidence, the behavior of Carolyn Walter, and the exclusion of Martha Wetherholt as a witness, there is a reasonable possibility that the argument might have contributed to the conviction.

## ISSUES RESTATED WITH ARGUMENT AND AUTHORITIES

**Issue One, Restated:**

The trial court erred by denying John Calvin Marshall's motion to suppress statements under the Fifth, Sixth and Fourteenth Amendments to the United States of America, and under Article 38.22 of the Texas Code of Criminal Procedure.

**A. Applicable Law**

Article 38.22 of the Texas Code of Criminal Procedure governs that admissibility of statements. Article 38.22 requires that an oral statement must be recorded and that prior to the statement during the recording that the accused if given the warning in Subsection (a) of Section 2. TEX. CODE CRIM. PROC ART. 38.22 sec. 3(a)(2) (Vernon

7

Ann. 2011). The Fifth Amendment of the United States Constitution provides the right to have counsel present during any police initiated questioning. *State v. Gobert*, 275 S.W.2d 888, 892 (Tex. Crim. App. 2009). "Once a suspect has clearly invoked his right to counsel, no subsequent exchange with the police (unless the suspect has initiated it himself can serve to undermine the clarity of the invocation." *Id.* at 895. Although it is not an absolute right, a criminal defendant (in the Sixth Amendment context) has the right to consult with his counsel in private. *Woodruff v. State*, 330 S.W.3d 709, 724 (Tex. App.– Texarkana 2010) cert. denied. *Woodruff v. Texas*, 132 S. Ct. 502 (2011). "If a state agent interferes with confidential attorney-client communications, not only is there a risk of disclosure of confidential information but also such an intrusion chills free discussion between a defendant and his attorney." *Id.* quoting *State v. Pecard*, 196 Ariz. 371, 998 P.2d 453, 459 (Ariz. Ct. App. 1999). Rule 503 governs Lawyer-Client Privilege and provides that the privilege may be claimed by the client or by the or lawyer or the lawyer's personal representatives. TEX R. EVID. 503(c) (Vernon Ann. 2011). The client may also "refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. TEX. R. EVID 503(b)(1). This includes a representative of the client. TEX. R. EVID 503(b)(1)(A) (Vernon Ann. 2011). A representative is a person having authority to obtain professional legal services. TEX. R. EVID. 503(2)(A) (Vernon Ann. 2011). When the trial court makes explicit findings of fact the appellate court will determine whether the evidence viewed in the light most favorable to the trial court's ruling supports those finding of fact. *Kelly v. State*, 204 S.W.3d 808 (Tex. Crim. App. 1997).

## B. Analysis of Facts in this Case

Prior to trial John Calvin Marshall filed a pre-trial motion to suppress statements. CR 21-22.[5] During the motion to suppress Detective Michael King testified that on April 29, 2011, he arrested 70 year old John Calvin Marshal for Burglary of Habitation. MTS RR 21, 24.[6] Detective King obtained an arrest warrant for Mr. Marshall which alleged that Mr. Marshall had entered the home of Carolyn Walter on April 23, 2011 without her effective consent and with the intent to commit sexual assault or did commit sexual assault. MTS RR 19, 22. (See State's Exhibit 1 and Exhibit 2) Detective King located John Calvin Marshall at the Canton First United Methodist Church. MTS RR 21. Officers of the Canton Police Department arrested Mr. Marshall and Detective King transported Mr. Marshall to the Canton Police Department. MTS RR 21. Upon arriving at the Canton Police Department Detective King took Mr. Marshall to his office. MTS RR 25-26. Detective King finished the book-in process first. MTS RR 28, 43. Detective King read Mr. Marshall the warnings required by Article 38.22. MTS RR 30. Mr. Marshall told Detective King that considering the serious nature of the charges that he thought he needed an attorney. MTS RR 31. Mr. Marshall tried to contact an attorney, Mr. Spruiell. MTS RR 31. Detective King agreed that Mr. Marshall asked for an attorney and when Mr. Marshall had done so that all questioning must have ceased. MTS RR 33, 43. Detective King had a recorder that was operational while Mr. Marshall attempted to contact an attorney and Detective King did not tell Mr. Marshall the recorder was operating. MTS RR 34. Mr. Marshall made an attempt to contact an attorney and

---

[5] The trial court issued ruling denying the motion to suppress statements. CR 37.

[6] References to the Reporter's Record which contains the motion to suppress statements is designated "MTS" with a roman numeral preceding "MTS" indicating th volume and an arabic numeral following "MTS" specifying the correct page in the record.

contacted his wife and directed her to attempt to contact an attorney. MTS RR 36-37. Detective King was not going to leave Mr. Marshall alone in his office. MTS RR 49 Detective King would have listened to Mr. Marshall had he had a conversation with an attorney in his office. MTS RR 50-51. Detective King maintained that based on his training and experience, at no point in time after he received custody of Mr. Marshall did he interrogate Mr. Marshall with an intent to receive information pertaining to this offense. MTS RR 46.

Detective King had completed the book in process. Detective King read Mr. Marshall the required warnings under Article 38.22 and Mr. Marshall indicated he wanted to speak with an attorney. When a suspect requests an attorney, all questioning must cease. Detective King maintained he did not interrogate Mr. Marshall with an intent to receive information pertaining to the offense for which Mr. Marshall was charge. Detective King, however, allowed the recording device to record even after Mr. Marshall made his request for counsel. It is clear that Detective King had no intent to cease attempting to question Mr. Marshall at that point. Article 38.22 requires that oral statements are recorded in order to be admissible and Detective King obviously knows this fact. Detective King kept the recording device operational. Mr. Marshall attempted to contact an attorney and he also attempted to have his wife, who would be acting as his representative, contact an attorney. The confidentiality of the lawyer-client relationship is paramount to the effective operation of the judicial system. Detective King had every intent to stay in the room while Mr. Marshall attempted to speak with attorney and the attorney's employees. By continuing to record Mr. Marshall while he attempted to contact an attorney, Detective King did not honor Mr. Marshall's request and violated his right to have all questioning cease once a request for counsel is made.

**Issue Two, Restated:**

The trial court erred by permitting th State to introduce 404(b) evidence concerning Jean Mullins.

**A. Applicable Law**

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination fo the action mor probable or less probable than it would be without the evidence. TEX. R. EVID. 401 (Vernon Ann. 2011). The trial court must conclude that the evidence has relevance apart from character conformity. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991) Rule 403 of the Texas Rules of Evidence provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403 (Vernon Ann. 2011). Extraneous offenses are not admissible to prove that the defendant acted in conformity with his character. *Russell v. State*, 113 S.W.3d 530, 535 (Tex. App.– Ft. Worth 2003, pet. ref'd). If the extraneous offense evidence makes an elemental or evidentiary fact more or less probable or if it tends to rebut a defensive theory then the evidence has some relevance beyond tending to show character conformity. *Id.* If the responses elicited from witness are sufficient, cross examination may raise a defensive theory. *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1996). Generally, if the State wishes to rebut a defensive theory through extraneous offense evidence, the Defendant must have produced that defensive theory through direct evidence. *Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002). This defensive theory may not be

11

elicited by prompting or maneuvering by the State. *Id.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. TEX. R. EVID. 404(b) (Vernon Ann. 2011). "Evidence of other "crimes, wrongs, or acts" may also create "unfair prejudice" if under the circumstances a jury would be more likely to draw an impermissible character conformity inference than the permissible inference for which the evidence is relevant, or if otherwise distracts the jury from "the specifically charged offense: and invites them to convict on a moral or emotional basis rather than as a reasoned response to the relevant evidence." *Montgomery,* 810 S.W.2d at 395. The admissibility of evidence is within the discretion of the trial court and should not be set aside absent a showing of abuse of discretion. *Id.* at 390. Judicial rulings should be upheld if the trial court follows the appropriate analysis and balancing factors and the result cannot be reached in an arbitrary and capricious manner. *Id.* at 392.

The trial court should consider several factors when conducting its Rule 403 balancing test:

1. the inherent probative force of the proffered item of evidence along with

2. The proponent's need for that evidence against

3. Any tendency of the evidence to suggest a decision on an improper basis

4. Any tendency of the evidence to confuse or distract the jury for the main issues

5. Any tendency of the evidence to be given undue weight by a jury that not been equipped to evaluate the probative force of the evidence, and

6. the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). See also *Wheeler*

*v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). The trial court will have abused its discretion when one or more of these criteria leads to a risk that the probative value of the tendered evidence is substantially outweighed by unfair prejudice. *Montgomery* at 393. In order for there to be reversible error the error must have affected the Appellant's substantial rights. Tex. R. App. P. 44.2(b). The error must have had a substantial and injurious effect or influence in determining the jury's verdict. *Rich v. State*, 160 S.W.3d 575, 577-78 (Tex. Crim. App. 2005).

## B. Analysis of Facts in this Case

The State indicated in a hearing outside the presence of the jury that it intended to mention an incident concerning Mr. Marshall and Ms. Mullins during its opening. II RR 15. The State indicated that it would not go into specifics but would be mentioning an incident as it pertained to identification of the suspect. II RR. 15. Mr. Marshall objected that the State was introducing an extraneous offense. II RR 21, 22. The trial court indicated that the State was offering it for identification purposes and the State agreed. II RR 21.

Detective King contacted Jean Mullins, who was employed by the Children's Advocacy Center. II RR 113, 43. Detective King had a hunch that Ms. Mullins might know the identity of the perpetrator that Ms. Walter would not identify. II RR 114. Ms. Mullins had told Detective King, off the record, about an encounter she had with an individual. She did not name the individual. III RR 143. Ms. Mullins testified before Ms. Walter testified during trial. III RR 125-165. Ms. Mullins said that Detective King came to her home mid morning on April 23, 2011 and asked for her assistance. III RR 127. She and Detective King were looking for a residence of a John Mitchell. III RR 128. They found the residence they were looking for which was that of John Marshall. III RR 128.

Detective King and Ms. Mullins returned to Ms. Walter's residence. III RR 129.

Ms. Mullins spoke with Ms. Walter but Ms. Walter would not give her the name of the person who had assaulted her. III RR 130. Ms. Mullins also stated that prior to April 23, 2011 she had an incident involving John Marshall. III RR 133. Ms. Mullins claimed that in August 2008, Mr. Marshall had come to the Children's Advocacy Center where she was employed. The center is a public business and the doors are left open. III RR 134. Ms. Mullins gave Mr. Marshall a tour of the business. Ms. Mullins said that Mr. Marshall sniffed her lower arm all the way up to her shoulder. III RR 136. Mr. Marshall left the business. III RR 137. Mr. Marshall came back to the business in late August or early September. He told Ms. Mullins he thought she was beautiful and that he was interested in her, but Ms. Mullins indicated she was not interested in him. III RR 138. Mr. Marshall apparently tried to pull Ms. Mullins across her desk or counter as they were shaking hands. III RR 138; IV RR136-37. He then came up behind her and put his arm around her neck and tried to open mouth kiss and lick her face. III RR 139. He did not touch her breasts, vagina or anything. III RR 161. She claimed she was in a chokehold but she had no injuries. III RR 161 Ms. Mullins said that Mr. Marshall came by the Children's Advocacy Center in late October and apologized. III RR 142. Ms. Mullins went over to Mr. Marshall's home at a later date to see about adopting out a dog. III RR 149. Ms. Mullins was concerned about retaliation in the community if she reported Mr. Marshall. III RR 145.

Prior to opening, the State informed the trial court that it was going into alleged 404(b) acts for identification purposes. (The Court later found that identity was not an issue which required 404 (b), see footnote 7). The State was allowed by the trial court from the very outset of the trial to begin mention of 404(b) evidence. While there were no specifics mentioned, the word incident can carry with it an inflammatory connotation when mentioned in a criminal trial. The State should not have been allowed to mention before the jury and during opening statement the possibility of 404(b) acts. The trial court finally held a evidentiary hearing concerning the 404(b) evidence before Ms. Mullins testified.

The trial court must perform a proper balancing test as required in *Montgomery* and *Gigliobianco supra,* before it admits 404(b) evidence. The court found that Ms.Mullins testimony was admissible for the purposes of showing intent.[7]

The trial court must look at the inherent probative force of the proffered item of evidence along with the proponent's need for the evidence. The probative force of the 404(b) is minimal. It only suggested that the jury make a decision on an improper basis. That improper basis being an emotional one. The evidence indicated at least in some part that Mr. Marshall was attempting or was being unfaithful to his wife. This type has no probative value. Ms. Mullins' testimony was only offered to show that Mr. Marshall acted in conformity with some character trait. The court noted in its ruling that the 404(b) evidence was not even of a sexual nature. Since the evidence was not of a

---

[7] The Court finds that identity is not an issue that requires that 404(b) evidence would come in. It appears from the testimony of the witness Ms. Mullins that the victim knew the defendant; however, the Court does find that the evidence is admissible for the purposes of showing intent. The Court heard cross-examination on the alleged victim's state of intoxication as well as the statement by the defendant to detective king in State's Exhibit 46 that stated was crazy – or Carolyn Walter, the alleged victim, was crazy or something to that effect.So then the Court looked at 403, Rule 403 and finds that it is – the 404(b) evidence is not of a sexual nature, so the Court's going to find the probative value is not outweighed by the danger of unfair prejudice. III RR 121-22.

sexual nature, then the 404(b) could not be relevant in helping the jury in determining Mr. Marshall's alleged intent for the offense of burglary of habitation with intent to commit sexual assault.

When the trial court allowed the alleged 404(b) acts to come into evidence it was impossible for the trial court to determine the State's need for the evidence at that time. Mr. Marshall reserved his opening statement. Carolyn Walter had not testified. Mr. Marshall had presented no direct evidence regarding a defensive theory nor had he had the opportunity to cross examine Ms. Walter. Ms. Mullins could have easily testified about her involvement without mentioning the specifics of any incident. Therefore, the trial court was not in a position at this juncture to determine the State's need for the evidence.

The Court points to the questioning of witnesses about Ms. Walter's "intoxication." The State's witnesses Gloria Guerra and Carla Gandy testified about smelling alcohol on Ms. Walter. Mrs. Gandy did so during direct examination. The testimony on alcohol, if it illustrated anything, only illustrated that different people on the scene observed different things about Ms. Walter. In fact, alcohol was mentioned once during closing argument. V RR 34. The trial court also considered, in its ruling admitting 404(b) testimony, made by Mr. Marshall that were the subject of Issue One in this brief. The State introduced this evidence into the trial and Mr. Marshall had objected to its admission. The State had effectively, through its own witnesses, introduced evidence that the trial court relied on to justify its admission of the 404(b) evidence.

Further, the evidence was distracting the jury from the main issue. The State spent a great deal of time developing Ms. Mullins' testimony as well as mentioning an "alleged incident." Ms. Mullins' initial direct testimony regarding just Mr. Marshall

16

encompassed pages 125 through 147 of Volume III of the reporter's record. In contrast, Ms. Walter's entire initial direct examination by the State encompassed only pages 7 through 34 of Volume IV. Ms. Mullins' testimony did not assist the jury in making Mr. Marshall's alleged intent more or less probable. The 404(b) evidence introduced through her testimony improperly suggested that that Mr. Marshall acted in conformity with an alleged bad character. The State spent an inordinate amount of time addressing the 404(b) evidence as that evidence related to the rest of its case. The initial direct examination by the State is important as Mr. Marshall, nor any other defendant, is obligation to question the witnesses. Since Mr. Marshall does not have to question the witnesses, the information adduced from the witnesses by the State on direct examination is the evidence the State feels it has to put before the jury to prove its case. The time spent by the State delving into the 404(b) evidence rendered it highly prejudicial.

Finally, the jury could not help but give the 404(b) evidence undue weight as it actually heard this evidence prior to Ms. Walter even testifying. This was the proverbial skunk in the jury box. There was no way for the jury to follow the court's instructions. The jury simply could not weigh the testimony for the purpose of which the trial court erroneously admitted it. Mr. Marshall had to defend two separate cases throughout the trial. This case is precisely why there is a balance test safeguarding the admission of 404(b) evidence. Mr. Marshall's right to only be tried for the indicted offense was stolen from him.

The admission of the 404(b) evidence constitutes reversible error as it undoubtably had a substantial and injurious effect during the trial. The evidence carried very little probative value and it had a highly prejudicial effect. The evidence had one purpose and that was to influence the jury by attempting to show that John Marshall

17

acted in conformity with an allege bad character traits. The 404(b) evidence certainly influenced the jury's verdict.

**Issue Three, Restated:**

The trial court erred by excluding relevant evidence of which the testifying witness had personal knowledge that was material to John Calvin Marshall's defense.

**Issue Four, Restated**:

John Calvin Marshall's Sixth Amendment and Fourteenth Amendment rights to the United States Constitution were violated by not allowing him to present a defense.

**A. Applicable Law**

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination fo the action mor probable or less probable than it would be without the evidence. TEX. R. EVID. 401 (Vernon Ann. 2011). "Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis – a pertinent hypothesis being one which, if sustained, would logically influence the issue. Hence it is relevant to put in evidence any circumstance which tends to make the proposition at issue with more or less probable. *Plante v. State*, 692 S.W. 2d 487, 491 (Tex. Crim. App. 1985) quoting *Waldrop v. State,* 133 S.W.2d 969, 970 (1940). Rule 412 restricts the introduction of evidence regarding the complainant's prior consensual behavior to situations where the evidence is relevant to the defendant's defense and not unduly prejudicial or inflammatory. *Draheim v. State*, 916 S.W.2d 599 (Tex. App.– San Antonio 1996, pet. ref'd). A court abuses its discretion to allow testimony of the complainant's prior sexual behavior when it rebuts or explains the only medical evidence offered at trial. *Miles v. State*, 61 S.W.3d 682, 686 (Tex. App.– Houston [1st Dist.] 2001, pet. ref'd). Rule 602 of the Texas Rules of Evidence provides

that witness can only testify when there is sufficient evidence to support finding of a personal knowledge of the matter to which the witness will be testifying. *Williams v. State*, 402 S.W.3d 425, 436 (Tex. App.– Houston [14th Dist.] 2013, pet. ref'd). The erroneous exlcusion of evidence offered under the rules of evidence normally constitutes non-constitutional evidence and is reviewed under Tex. R. App. P. 44.2(b). *Tillman v. State*, 376 S.W.3d 188, 198 (Tex. App. – Houston [14th Dist.] 2012, no pet.)

There are few rights as fundamental as that of the Defendant to present witnesses in his own defense. *Chambers v. Mississippi*, 410 U.S. 284 (1973) E.g. *Webb v. Texas*, 409 U.S. 95 (1972); *Washington v. Texas*, 388 U.S. 14, 19 (1967); *In re Oliver*, 333 U.S. 257 (1948). The United States Constitution whether it be through the Due Process Clause of the Fourteenth Amendment or the Compulsory Process or Confrontation Clauses of the Sixth Amendment, guarantees the defendant a right to present a defense. *Kelly v. State*, 321 S.W.3d 583, 592 (Tex. App.– Houston [14th Dist.] 2010. A defendant in a criminal trial is guaranteed by the Sixth Amendment of the United States Constitution to call witnesses on his own behalf. *Johnson v. State*, 352 S.W.3d 224, 233 (Tex. App.–Houston [14th Dist.] 2011. This right is subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt or innocence." *Keller v. State*, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984). If the trial court excludes evidence that is relevant and reliable and this evidence forms an integral part of a defendant's defense then the exclusion of the evidence can rise to that of a constitutional violation. *Kelly*, 321 S.W.3d at 592. When a defendant's evidence is excluded by the trial court and that exclusion prevents effectively prevents the defendant from presenting a defense, the error must be reviewed under Texas Rule of Appellate Procedure 44.2 (a). *Ray vs. State*, 178

S.W.3d 833 (Tex. Crim. App. 2005).

## B. Analysis of the Law with Facts

During direct examination the State elicited testimony from Matthew Jackson of Ms. Walter's normal demeanor. IV RR 201, 202. The State elicited testimony about her normal demeanor from Enrique Guerra. IV RR 12. The State asked Gloria Guerra and she answered questions regarding Ms. Walter's general demeanor. IV RR 19. Ms. Walter's son John Walter testified under direct examination to his mother's normal demeanor and behavior during his testimony. IV RR 35-36. He also testified about her being divorced and dating. IV RR 35-36. Ms. Walter's daughter in law, Lisa Walter's answered the State's questions regarding Ms. Walter's normal behavior. IV RR 49. The State called Kristy Link and entered a lab report into evidence that showed and additional contributor in the DNA profile which she said could have come from a different person. IV RR 78. The State, through Detective King, entered evidence of statements Mr. Marshall had made in custody regarding Ms. Walter. II RR 129. Ms. Walter testified about her divorce. IV RR 9-10. Ms. Walter also testified about her sex life during the previous two years. IV RR 33. The State accused Mr. Marshall of fabricating his testimony IV RR 129-132.

Mr. Marshall called Martha Wetherholt to testify. IV RR 172. The State objected under 403, relevance, and 602 lack of personal knowledge.[8] The State asserted that Mr. Marshall was attempting to assassinate the character of the victim. IV RR 173. The trial court held a hearing outside the presence of the jury. IV RR 181. The trial court ruled that Ms. Wetherholt could not testify and sustained the State's objections under Rule 401, Rule 602, and Rule 412.

---

[8] The State later objected under 401, 404, 602 and hearsay. IV RR 190.

Mr. Marshall objected to the exclusion of Ms. Weatherholt's testimony as a violation of Mr. Marshall's Due Process rights and his ability to effectively present a defense. IV RR 197. The trial court ordered the jury to disregard Ms. Weatherholt's testimony in its entirety. IV RR 196.

The trial court ruled that Mr. Marshall could not present testimony from Ms. Wetherholt. Mrs. Wetherholt's testimony was necessary to give the jury a complete view of Carolyn Walter. The State was allowed to present evidence regarding Ms. Walter's general demeanor and her habits. Ms. Walter testified about her sexual history. The State introduced a DNA report with an additional contributor. The State also introduced evidence of Mr. Marshall saying that he thought he had come into contact with a crazy person. The State attempted to paint Ms. Walter in a certain light. It was not necessary for the State to present this type of evidence, but it did. Mrs. Wetherholt's testimony was relevant to complete the picture that the State tried to paint. Mrs. Wetherholt had personal knowledge of Carolyn Walter's demeanor and her habits. Mrs. Wetherholt worked with Ms. Walter and personally witnessed what Ms. Walter's divorce did to her. Mrs. Wetherholt's testimony would show another side to Ms. Walter to which the other witnesses did not testify or would not testify. The State offered the only medical testimony during trial. This testimony indicated that Ms. Walter could have had sexual relations with another person which she claimed she had not done. The trial court excluded Mrs. Weatherholt's testimony based on Rule 412 even though the State had not objected to Mrs. Wetherholt's testimony on Rule 412 grounds. Mrs. Wetherholt would not have testified directly as to any consensual sexual relationships that Ms. Walter may have had, but had she had that knowledge that information would have possibly been admissible.

The exclusion of Mrs. Wetherholt's testimony was harmful and should be

examined under Texas Rule of Appellate Procedure 44.2(a) as it constitutional error. Mr. Marshall was not able to present a coherent defense because Ms. Weather hold was a key witness that actually knew both parties. The exclusion of her testimony rendered the defense of Mr. Marshall ineffective. The error contributed to Mr. Marshall's conviction and it did so beyond a reasonable doubt.

Even if the alleged error does not rise the level of a constitutional error, the exclusion of Ms. Wetherholt's testimony had a substantial and injurious effect. Mr. Marshall needed to illustrate and explain to the jury circumstances surrounding Ms. Walter and why she may have fabricated her story. The trial court's denying of Mr. Marshall the testimony of a third party that could shed light upon the possible motivations of Ms. Walter contributed to the conviction and subsequent punishment of John Calvin Marshall.

**Issue Five, Restated:**

The trial court erred when it allowed the State to make an improper jury argument by asking the jurors to put themselves in the place of the complainant.

**A. Applicable Law**

Jury argument must be a summation of the evidence, a reasonable deduction from the evidence, an answer to the argument of opposing counsel or a plea for law enforcement in order to be permissible. *Chandler v. State*, 689 S.W.2d 332, 334 (Tex. App– Ft. Worth 1985, no pet.) It is improper for the prosecutor to ask the jury members to put themselves in the complainant's shoes. *Id*. at 334-35. A improper argument from a prosecutor is normally cured when an objection is sustained and the jury is instructed to disregard the statement. *Thomas vs. State*, 578 S.W.2d 691, 695 (Tex. Crim. App. 1979). A reversal is not required unless the remarks are so inflammatory that their

prejudicial effect cannot be cured by an instruction to disregard. *Id.* The test to determine whether error is harmless is to decide, in light of the record as a whole, whether there is a reasonable possibility that the argument complained of might have contributed to the conviction. *Garrett v. State*, 632 S.W.2d 350, 353 (Tex. Crim. App. 1982). The Court should focus on the error and its possible impact. *Davis v. State*, 964 S.W.2d 14, 18 (Tex. App.– Tyler 1997). If the trial court overrules a timely and appropriate objection the trial court effectively puts its stamp of approval on the argument. *Id.*

## B. Analysis of Facts in this Case

The State made the following argument:

How are you supposed to act when you're being sexually assaulted? I don't know. I've never been sexually assaulted. Think in your minds how you are supposed to act when you're sexually assaulted. V RR 27.

Mr. Marshall objected to the complained of argument by asserting that the State was asking the jurors to place themselves in the position of the complainant. V RR 27. The court sustained the objection, issued an instruction to disregard, and overruled Mr. Marshall's request for a mistrial. V RR 27-28. The State then continued on in a similiar line of argument on the heels of Mr. Marshall's objection. The court overruled Mr. Marshall's objection to the complained of argument. V RR 27.

The State asked the jurors to place themselves in Carolyn Walter's shoes. This was an obviously improper argument as evidenced by the trial court sustaining Mr. Marshall's objection. Given the admission of the 404(b) evidence, the behavior of Ms. Walter, and the fact that Mr. Marshall was not given the opportunity to present Mrs. Wetherholt to explain what he believed were circumstances leading to Ms. Walter's

23

accusation, the error was very harmful. The error magnified the exclusion of Mrs. Wetherholt's testimony by inviting the jurors to speculate as to why Mr. Marshall never explained Ms. Walter's behavior.. Further, the State immediately after Mr. Marshall's objection continued arguing on the same subject asking how she (assuming she to be Ms. Walter) is supposed to react. This argument placed emphasis on the complained of argument and the instruction to disregard the argument was rendered useless because of the State continued to argue the same subject matter. In light of the record, this argument likely contributed to the conviction.

## PRAYER FOR RELIEF

**WHEREFOR, PREMISES CONSIDERED**, Appellant respectfully prays that his conviction in the above entitled and numbered cause be reversed and rendered or in the alternative that the case be remanded to the trial court for a new trial.

Respectfully Submitted,

Nolan D. White
Attorney at Law

Dean White
Attorney at Law

690 West Dallas
Canton, Texas 75103
(903) 567-4155
(903) 567-4964 (fax)

By: /s/ Nolan D. White
    **Nolan D. White**
    State Bar No. 24039238
    nwatty@etcable.net
    Attorney for **John Calvin Marshall**

By: /s/ Dean White
    **Dean White**
    State Bar No. 21299500
    dwatty@etcable.net
    Attorney for **John Calvin Marshall**

## CERTIFICATE OF SERVICE

This is to certify that on May 1, 2015 a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Van Zandt County, 400 S. Buffalo, Canton, Texas 75103, electronic filing manager, to chrismartin@vanzandtcounty.org

/s/ Nolan D. White
**Nolan D. White**

/s/ Dean White
**Dean White**

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document is 7,218 words in total and is in within the word count restrictions set forth by the Texas Rules of Appellate Procedure.

By: /s/ Nolan D. White
**Nolan D. White**
Attorney for **John Calvin Marshall**

By: /s/ Dean White
**Dean White**
Attorney for **John Calvin Marshall**